# EXHIBIT 18

**MEMORANDUM OF AGREEMENT**
**AMONG**
**THE NATIONAL PARK SERVICE**
**THE NATIONAL CAPITAL PLANNING COMMISSION**
**THE DISTRICT OF COLUMBIA STATE HISTORIC PRESERVATION OFFICE**
**AND**
**THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS**
**REGARDING**
**THE KENNEDY CENTER EXPANSION PROJECT**
**WASHINGTON, D.C.**

**WHEREAS**, the John F. Kennedy Center for the Performing Arts (Kennedy Center) is proposing to expand the Kennedy Center to provide approximately 60,000 square feet of space to the existing Edward Durell Stone building and create dedicated facilities to serve its existing and expanding programs; and

**WHEREAS**, the proposed Kennedy Center Expansion Project (Expansion Project) would improve the Kennedy Center's facilities by adding rehearsal spaces, offices, classrooms, lecture halls, galleries, and multipurpose spaces and increase access to the general public; and

**WHEREAS**, after detailed study of various alternatives and consideration of efforts to avoid and minimize certain impacts of the proposed Expansion Project, the Kennedy Center has defined the Two Land-Based Pavilions plus River Pavilion as the Preferred Alternative and the Pedestrian Bridge Crossing over the Rock Creek and Potomac Parkway as the Preferred Option for construction (Alternative C2 in the Kennedy Center Expansion Project Environmental Assessment and reflected in the Expansion Project plans dated November 2014 attached hereto as Appendix A); and

**WHEREAS,** the Expansion Project would include:

- the construction of an expansion facility of approximately 60,000 square feet contained mostly underground and within two land-based pavilions, which would be connected to the Edward Durell Stone building on the south, and a pavilion that would float on the Potomac River;
- the construction of a pedestrian bridge over the Rock Creek and Potomac Parkway to connect the River Pavilion with the expansion on land; and,
- the construction of a trail spur from the Rock Creek and Potomac Parkway multi-use trail to connect the River Pavilion with the trail; and

**WHEREAS**, the Project Area of the Expansion Project would be located between the south façade of the Kennedy Center's existing building and the entrance ramp to the Theodore Roosevelt Memorial Bridge and would extend across the Rock Creek and Potomac Parkway into the Potomac River as described in Appendix B; and

**WHEREAS**, a portion of the Project Area falls within the Rock Creek and Potomac Parkway, which is under the jurisdiction of the National Mall and Memorial Parks, a unit of the National Park Service (NPS); and

**WHEREAS**, permitting or jurisdictional transfers conducted by NPS and approval of projects by the National Capital Planning Commission (NCPC) constitute federal Undertakings subject to Section 106 of the National Historic Preservation Act (NHPA) (16 USC 470f) and its implementing regulations (36 CFR Part 800); and

**WHEREAS**, the NPS Undertaking is the transfer of jurisdiction to the Kennedy Center of a portion of NPS administered property and certain air rights and the issuance of construction and right-of-way permits; and

**WHEREAS**, the NCPC Undertaking is the approval of the design of the Expansion Project under its authorities specified in the National Capital Planning Act and the approval of the transfer of jurisdiction from NPS to the Kennedy Center; and

**WHEREAS**, the NPS and NCPC are acting as co-lead federal agencies for the Expansion Project in fulfillment of their responsibilities under Section 106 pursuant to 36 CFR 800.2(a)(2); and

**WHEREAS**, the Expansion Project requires a Clean Water Act Section 404 permit from the U.S. Army Corps of Engineers, Baltimore District (Baltimore District), the issuance of which would constitute an Undertaking subject to Section 106 of the NHPA and its implementing regulations, and the Baltimore District has designated the NPS and NCPC as the co-lead federal agencies who will act on its behalf, fulfilling the Baltimore District's responsibilities under Section 106 in accordance with 36 CFR Part 800.2(a)2; and

**WHEREAS**, the Kennedy Center, as a trust instrumentality of the United States authorized to design and construct the Expansion Project with jurisdiction over the land on which the Expansion Project will be partially constructed, has participated as a Consulting Party in the process pursuant to 36 CFR 800.2(c)(4); and

**WHEREAS**, the Kennedy Center participated in consultation, has responsibilities for implementing stipulations under this Agreement, and, pursuant to 36 CFR 800.6(c)(2), has been invited to be a Signatory to this Agreement; and

**WHEREAS**, the NPS and NCPC have consulted with, and invited the U.S. Army Corps of Engineers to be a Concurring Party to this Agreement; and

**WHEREAS**, the NPS and NCPC initiated Section 106 consultation with the District of Columbia State Historic Preservation Office (DCSHPO) by letter dated July 12, 2013; and

**WHEREAS**, the NPS and NCPC notified the public and conducted a combined National Environmental Policy Act (NEPA) Scoping and Section 106 consultation meeting on July 22, 2013, in order to inform the public of the Expansion Project design and to solicit verbal and written comments, followed by Section 106 consultation meetings held on September 17, 2013, and August 14, 2014, to provide additional opportunities for the Consulting Parties to comment on historic preservation concerns regarding the Expansion Project; and

**WHEREAS**, the NPS, NCPC, and DCSHPO, together with the Kennedy Center and the Consulting Parties, defined the Undertakings' area of potential effects to include the parcels, buildings, cultural landscapes, and view corridors surrounding the Project Area and to encompass the geographic areas within which the Undertakings may directly or indirectly cause alterations in the character or use of historic properties as described in Appendix C; and

**WHEREAS**, in recognition of its significance as the sole national memorial to President John F. Kennedy within the National Capital and its environs and its significance as an important example of the work of Edward Durell Stone, a nationally recognized architect of the Modern Movement, the Kennedy Center was determined eligible for the National Register of Historic Places by the DCSHPO on February 13, 2012; and

**WHEREAS**, the Rock Creek and Potomac Parkway, comprised of approximately 180 acres in the northwest quadrant of Washington, D.C., and significant in the areas of community planning and development, engineering, recreation, and landscape architecture, was listed in the National Register of Historic Places on May 4, 2005, under the multiple property listing "Parkways of the National Capital Region, 1913-1965;" and

**WHEREAS**, the NPS and NCPC, in accordance with 36 CFR 800.2(a)(4), have invited individuals and organizations with a demonstrated interest in the Undertakings and the public to participate as Consulting Parties in the Section 106 process, with the full list of invited Consulting Parties compiled in Appendix D; and

**WHEREAS**, the NPS and NCPC, in accordance with 36 CFR 800.2(c)(2)(ii), invited the Delaware Nation by letter dated October 28, 2013, to participate in Section 106 consultation on the Expansion Project and met with representatives of the Delaware Nation on November 25, 2013, to discuss the project; and

**WHEREAS**, as a result of consultation with the Delaware Nation, Phase 1A archaeological investigations were conducted and no known American Indian traditional cultural properties exist within the study area; and

**WHEREAS**, the NPS and NCPC provided the Delaware Nation with a report documenting the Phase 1A archaeological investigations and its conclusions and the Delaware Nation responded on October 24, 2014, stating that the proposed Expansion Project was not within their area of interest; and

**WHEREAS**, the NPS and NCPC have consulted with the DCSHPO as well as the Consulting Parties and determined that the Undertakings will have adverse effects on the Kennedy Center and the Rock Creek and Potomac Parkway (as described in the Summary of Adverse Effects Determination in Appendix E); and

**WHEREAS**, in accordance with 36 CFR 800.6(a)(1), the NPS and NCPC have notified the Advisory Council on Historic Preservation (ACHP) of the adverse effects determination and provided the documentation specified in 36 CFR 800.11(e), and the ACHP has chosen not to participate in consultation pursuant to 36 CFR 800.6(a)(1)(iv); and

**WHEREAS**, through the process of consultation and design analysis, access from the terraces of the Edward Durell Stone building to the Expansion Project and access between the Rock Creek and Potomac Parkway multi-use trail and the Expansion Project have been adjusted to minimize potential effects on historic properties, and these adjustments are reflected in the Expansion Project plans dated November 2014 and attached in Appendix A; and

**WHEREAS**, on January 16, 2014, September 18, 2014, and November 20, 2014, in meetings before the public, the U.S. Commission of Fine Arts (CFA) approved the concept plans and revised concept plans for the Expansion Project; and

**WHEREAS**, on February 6, 2014, the NCPC provided comments on the concept plans for the Expansion Project; and

**WHEREAS**, on October 9, 2014, the NPS and NCPC released for public review and comment the Kennedy Center Expansion Project Environmental Assessment pursuant to NEPA, which analyzed the potential environmental impacts of the proposed Expansion Project; and

**WHEREAS**, the Kennedy Center submitted preliminary design documentation (reflected in the plans dated November 2014 and attached as Appendix A) to NCPC for review on December 4, 2014, and

**WHEREAS**, NCPC approved the two land-based pavilions on December 4, 2014, but did not approve the proposed River Pavilion and NCPC requested the Kennedy Center conduct additional analysis on the impacts of the River Pavilion and submit the results to the Commission prior to final review; and

**NOW, THEREFORE**, the NPS, NCPC, Kennedy Center, and DCSHPO agree that the Undertakings and the Expansion Project shall be carried out in accordance with the following stipulations in order to take into account the effects of the Undertakings on historic properties.

**STIPULATIONS**

The NPS, NCPC, and Kennedy Center shall work together to ensure that the following measures are carried out:

MITIGATION

1. Rock Creek and Potomac Parkway, Potomac Waterfront Section, Cultural Landscape Report. Prior to the onset of construction of the River Pavilion, the Kennedy Center shall provide funding not to exceed $80,000 to NPS to complete a Cultural Landscape Report (CLR) for the segment of the Rock Creek and Potomac Parkway from the terminus of Constitution Avenue (the Belvedere) to Virginia Avenue, including the parkway lands managed by NPS and the Kennedy Center frontage to the Potomac River shoreline and encompassing the portion of the Rock Creek and Potomac Parkway within the Project Area. The CLR will follow NPS standards for documentation as defined in the NPS publication *A Guide to Cultural Landscape Reports: Contents, Process, and Techniques* (1998) and include, at a minimum, the following components: a.) site history, including a historical narrative and annotated chronology, b.) existing conditions documenting landscape characteristics as they currently exist, c.) analysis and evaluation of the landscape characteristics, including a list of contributing and noncontributing features, d.) treatment guidelines for parkway features, and e.) bibliography. The NPS shall complete the CLR documentation within 1-1/2 years following the completion of construction of the Expansion Project, or sooner.

2. Curtain Wall Preservation. The Kennedy Center shall retain the section (approximately 2 square feet) of the existing marble curtain wall that will be removed as part of the Expansion Project to provide an opening for a projector window on the south façade of

the Edward Durell Stone building. The wall section will be labeled and retained permanently on site by the Kennedy Center so that the curtain wall can be restored at some future date, if desired. The Kennedy Center will provide documentation of the preservation plan for the curtain wall section to the DCSHPO prior to the completion of construction of the Expansion Project, or sooner.

3. Interpretive Signage. The Kennedy Center will incorporate permanent outdoor interpretive signage into the design and construction of the Kennedy Center Expansion Project through the following steps:

    a. The Kennedy Center shall develop and implement permanent outdoor interpretive signage to be installed on the Kennedy Center grounds. The interpretive signage will include 1 sign or interpretive display to be placed at a location that is convenient, safe, and accessible for public viewing somewhere on the site of the new pavilions or in some other suitable location around the Kennedy Center complex. The sign will broadly address the history of the Kennedy Center and the architectural significance of the Edward Durell Stone building and be illustrated with a select number of important historic images. The Kennedy Center will submit project documents and drawings detailing the design, content, and placement of the signage at the 45 percent design development stage to the Signatories for review and consultation. The Signatories will provide written comments within 45 calendar days of receipt. If the Signatories do not provide comments on the proposed signage within 45 calendar days of receipt, the Kennedy Center may move forward with the plans as proposed. The DCSHPO must approve final design, content, and placement of the signage. The Kennedy Center shall install the approved interpretive signage within 1 year following the completion of the construction of the Expansion Project, or sooner.

    b. Prior to the onset of construction of the Expansion Project, the Kennedy Center shall provide funding not to exceed $10,000 to NPS for the development and implementation of permanent outdoor interpretive signage for installation along the Rock Creek and Potomac Parkway in the vicinity of the Project Area. The interpretive signage will include 1 sign or interpretive display to be placed at a location that is convenient, safe, and accessible for public viewing. The sign will broadly address the history of the Rock Creek and Potomac Parkway and its significance as a historic connection between the presidential memorials. The signage will be developed in consultation with the Signatories and in accordance

with NPS design standards for permanent outdoor signage. The NPS shall install the interpretive signage within 1 year following the completion of the construction of the Expansion Project, or sooner.

DESIGN CONSULTATION

4. Final Design. Prior to the Kennedy Center's submission of the proposed final design documentation to NCPC or CFA, the Kennedy Center shall provide the proposed final design documentation to the NPS and NCPC for consideration and consultation as follows:

   (a) The NPS and NCPC shall review the proposed final design documentation focusing on any changes from the November 2014 plans and make a determination as to whether the proposed final design may result in new adverse effects that have not already been resolved and/or the intensification of known adverse effects on historic properties.

   (b) The NPS and NCPC shall forward, via electronic media, its determination in 4(a), and the Kennedy Center's proposed final design documentation to the Signatories for a 14-day review and comment period. NPS and NCPC will simultaneously post its determination and the proposed final design documentation on NPS's Planning, Environment & Public Comment (PEPC) website to notify the Consulting Parties and the public so that they may review and comment.

   (c) If the NPS and NCPC determine that no new adverse effects may result or no known adverse effects on historic properties would be intensified, and no Signatories, Consulting Parties, or the public objects within the 14-day review period, the Kennedy Center shall submit the proposed final design documentation to NCPC and CFA for their formal approvals.

   (d) If the NPS and NCPC determine that no new adverse effects may result or no known adverse effects on historic properties would be intensified and a Signatory objects in writing within the 14-day review period, the NPS and NCPC shall notify the Signatories and the Signatories shall consult to seek ways to resolve the objection. If the NPS and NCPC determine that the objection cannot be resolved, the NPS and NCPC shall follow the procedures in the Dispute Resolution clause of this Agreement.

(e) If the NPS and NCPC determine that no new adverse effects may result or no known adverse effects on historic properties would be intensified and a Consulting Party or the public objects in writing within the 14-day review period, the NPS and NCPC shall notify the Signatories, consider the objection, and submit the written objection(s), any NPS and NCPC position on the objection(s), and the proposed final design documentation to the Signatories and to NCPC and CFA for their formal approvals.

(f) If the NPS and NCPC determine that a new adverse effect may result or a known adverse effect on a historic property would be intensified, the NPS and NCPC shall immediately notify the Signatories and provide the Kennedy Center an opportunity to revise the final design documentation to avoid, minimize, or mitigate the new or intensified adverse effect and to submit a revised final design documentation package for review by NPS and NCPC. After the Kennedy Center has made and carried out its decision, the NPS and NCPC shall reevaluate to determine whether new or intensified adverse effects still remain. If unavoidable adverse effects on historic properties may result or be intensified, NPS and NCPC shall consult with the Signatories to determine whether the proposed final design documentation warrants an Amendment to this Agreement which would identify additional measures that will be carried out to avoid, minimize, or mitigate any new or intensified adverse effects.

(g) If the Agreement is amended, NPS and NCPC will notify the Consulting Parties and the public and provide or post the Amendment on PEPC. Otherwise, the Kennedy Center shall submit the proposed final design documentation to NCPC and CFA for their formal approvals.

(h) In the event that the Kennedy Center does not move forward with the Two Land-Based Pavilions plus River Pavilion alternative and the Pedestrian Bridge Crossing over the Rock Creek and Potomac Parkway option (Alternative C2 in the Kennedy Center Expansion Project Environmental Assessment and reflected in the Expansion Project plans dated November 2014 attached as Appendix A) and submits proposed final design documentation to NPS and NCPC that reflects a different alternative and option, the NPS and NCPC shall consult with the Signatories to refine the mitigation identified under Stipulations 1-3 of this Agreement. The mitigation will be refined in accordance with the effects of the alternatives as defined in the Summary of Adverse Effects Determination in

Appendix E and in a manner that is commensurate with the adverse effects of the selected alternative.

ARCHAEOLOGY

5. Archaeological Resources. The NPS and NCPC, through the Kennedy Center, will continue to pursue a phased approach to the identification and evaluation of archaeological resources that started with Phase 1A archaeological investigations. Additional archaeological investigations are warranted if final plans for the proposed construction excavations change to include depths that will continue below the currently documented depths of fill. If construction excavations continue to below fill, geoarchaeological investigations should be conducted to determine whether intact land surfaces are present. Geoarchaeological investigations will include the collection and analysis of soil borings to determine the presence of fill and undisturbed soil locations. All investigations will follow the *Guidelines for Archaeological Investigations in the District of Columbia* (1998, as amended) and the *Secretary of the Interior's Standards and Guidelines for Archaeology and Historic Preservation* (1983) and be conducted under the direct supervision of an archaeologist that meets or exceeds the pertinent qualifications in the *Secretary of the Interior's Professional Qualifications Standards*. In the event that archaeological investigations are required on NPS land, in accordance with the Archeological Resource Protection Act (ARPA), upon receipt of an application from the Kennedy Center archeological contractor and the subsequent 90-day review allowed under the law, NPS will issue a permit to the contractor to ensure that all archaeological work will follow the *Guidelines for Archaeological Investigations in the District of Columbia* (1998, as amended), the *Secretary of the Interior's Standards and Guidelines for Archaeology and Historic Preservation* (1983), and NPS *Director's Order 28: Cultural Resource Management* (1998). Should archaeological sites eligible for the National Register of Historic Places be discovered, the NPS and NCPC, through the Kennedy Center, will follow the procedures in the Unanticipated Discoveries Stipulation 6 of this Agreement.

6. Unanticipated Discoveries. The Kennedy Center will include provisions to this effect in the construction permit for the treatment of unanticipated archaeological discoveries, including human remains, during excavation, construction, or other ground-disturbing

activities resulting from construction of the Expansion Project. The Project Area for the Expansion Project is identified in Appendix B.

(a) In the event that a previously unidentified archaeological resource is discovered during activities in the Project Area, the Kennedy Center will immediately halt all ground-disturbing activities in the area of the resource and in the surrounding area where further subsurface remains can reasonably be expected to occur.

(b) The Kennedy Center will notify the DCSHPO and NCPC via email and by telephone immediately upon discovery of previously unidentified archaeological resources on Kennedy Center land. If the previously unidentified archaeological resources are discovered on NPS land, the Kennedy Center will immediately notify via email and by telephone the NPS in addition to the DCSHPO and NCPC. The DCSHPO or NPS, or their representatives, will visit the site within 48 hours of such notification, inspect the work site, and determine the nature and extent of the affected archaeological property and establish a resource area. Construction may then continue in the Project Area outside the newly established boundaries of the resource area.

(c) Within 3 working days of the original notification of discovery, the NPS or NCPC, in consultation with the DCSHPO, will determine the National Register of Historic Places eligibility of the resource.

(d) The NPS or NCPC, in consultation with the DCSHPO, will ensure compliance with 36 CFR 800.13. Work in the resource area shall not proceed until either: (a) the development and implementation of an appropriate data recovery or other recommended mitigation procedures; or (b) the determination is made that the located archaeological remains are not eligible for inclusion in the National Register of Historic Places.

(e) The Kennedy Center shall ensure that all materials and records resulting from data recovery are curated in accordance with the stipulations in the ARPA permit and in accordance with 36 CFR Part 79 by an institution or organization selected in consultation with the DCSHPO. All associated reports will meet contemporary professional standards, according to the *Department of the Interior's Format Standards for Final Reports of Data Recovery Programs* (42 FR 5377-79), and also meet the standards as set out in *Guidelines for Archaeological Investigations in the District of Columbia* (1998, as amended).

(f) The Kennedy Center shall immediately notify the DCSHPO and NCPC if human remains are discovered during construction on Kennedy Center land. If human remains are discovered during construction on NPS land, the Kennedy Center will notify the NPS, in addition to the DCSHPO and NCPC. The Kennedy Center shall ensure that all ground-disturbing activities in the immediate area of the discovery ceases immediately and stays halted in accordance with the protocols established by the District of Columbia Metropolitan Police Department. The Kennedy Center shall also ensure that the Secretary of the Interior's guidelines on human remains are followed. If the remains are determined to be Native American, the Native American Graves Protection and Repatriation Act of 1990 through the implementing regulations at 43 CFR Part 10 will govern the Kennedy Center's procedures and outcomes.

ADMINISTRATION

7. Updates. The NPS and NCPC will update the Signatories, the Consulting Parties, and the public on the actions taken to implement the terms of this Agreement. The Kennedy Center will work with the NPS and NCPC and provide information as requested so that the NPS and NCPC can provide updates to the Signatories and Consulting Parties. The update will take the form of a Report submitted on an annual basis from the effective date of the execution of this Agreement until its completion, at minimum. The annual Reports shall include information regarding activities undertaken pursuant to this Agreement and information on the overall status of the Expansion Project.

8. Duration. This Agreement will be valid for a period of 5 years from the date of execution by the last Signatory. If the Expansion Project has not been fully constructed after 5 years from the date of execution, the Signatories shall reconsider the terms of this Agreement.

9. Dispute Resolution. Should any Signatory object in writing to NPS or NCPC regarding any action carried out in accordance with this Agreement, the Signatories shall consult to resolve the objection. Between NPS and NCPC, the agency responsible for carrying out the action that is the subject of the objection has the lead in the dispute resolution unless otherwise decided between the two. In any event, both may participate. Should the Signatories be unable to resolve the disagreement, NPS and/or NCPC shall forward its background information on the dispute as well as NPS's and/or NCPC's proposed resolution of the dispute to the ACHP. Within 45 days after receipt of all pertinent documentation, the ACHP shall provide NPS and NCPC with written recommendations,

which NPS and NCPC shall take into account in reaching a final decision regarding the dispute, or notify NPS and NCPC that it shall comment pursuant to 36 CFR 800.7(c) and then proceed to comment. NPS and NCPC shall take the ACHP comments into account, in accordance with 36 CFR 800.7(c)(4). Any ACHP recommendation or comment shall be understood to pertain only to the subject matter of the dispute; NPS's and NCPC's responsibility to carry out all actions under this Agreement that are not subjects of the dispute shall remain unchanged.

10. Amendments. This Agreement may be amended when an Amendment is agreed to in writing by all Signatories. The Amendment will be effective on the date of the last signature.

11. Termination. If any Signatory to this Agreement determines that the terms of the Agreement cannot be or are not being carried out, that party shall so notify the other Signatories in writing and consult with them to seek resolution or Amendment of the Agreement. If within 60 days a resolution or Amendment cannot be reached, any Signatory may terminate the Agreement upon written notification to the other Signatories. Once the Agreement is terminated, and prior to work continuing on the Undertakings, NPS and NCPC must either execute a new Agreement or request, take into account, and respond to the comments of the ACHP per 36 CFR 800.7. They are not required to select the same option. NPS and NCPC will each notify the Signatories as to the course of action it will pursue.

12. Anti-Deficiency Act. The obligations of federal agencies under this Agreement are pursuant to 31 USC 1341(a)(1), therefore nothing in this Agreement shall be construed as binding the United States to expend in any one fiscal year any sum in excess of appropriations made by Congress for this purpose, or to involve the United States in any contract or obligation for the further expenditure of money in excess of such appropriations.

13. Electronic Copies. Within 1 week of the last signature on this Agreement, the NCPC shall provide each Signatory and Concurring Party with one legible, color, electronic copy of this fully-executed Agreement and all of it attachments. If the electronic copy is too large to send by email, the NCPC shall provide each Signatory and Concurring Party with a copy of this Agreement on a compact disc.

Execution of this Agreement by the NPS, NCPC, DCSHPO, and Kennedy Center and the implementation of its terms evidence that NPS and NCPC have taken into account the effect of

these Undertakings on historic properties and afforded the ACHP a reasonable opportunity to comment, and thereby satisfied their Section 106 responsibilities.

**SIGNATURES FOLLOW ON SEPARATE PAGES**

ATTACHMENTS

Appendix A: November 2014 Design
Appendix B: Project Area
Appendix C: Area of Potential Effects
Appendix D: List of Consulting Parties
Appendix E: Summary of Adverse Effects Determination

**SIGNATORY PAGE**

[signature] 1-23-2015

Karen Cucurullo Date

Acting Superintendent, National Mall and Memorial Parks, National Park Service

**SIGNATORY PAGE**

1/30/15

Marcel Acosta
Executive Director, National Capital Planning Commission

Date

**SIGNATORY PAGE**

1/15/2015

David Maloney — Date

District of Columbia State Historic Preservation Officer

**SIGNATORY PAGE**

Deborah Rutter — Jan 20 2015

**Deborah F. Rutter** — **Date**

**President, John F. Kennedy Center for the Performing Arts**

**CONCURRING PARTY PAGE**

[signature] Jan 22, 2015

Kathy Anderson — Date

U.S. Army Corps of Engineers, Baltimore District

**Appendix A: November 2014 Design**




Figure 1: Site plan, November 2014 Design.



Figure 2: Oblique view, November 2014 Design.



Figure 3: View looking northeast, November 2014 Design.



Figure 4: South elevation, November 2014 Design.



Figure 5: West elevation, November 2014 Design.



Figure 6: Site section through ginkgo grove, November 2014 Design.



Figure 7: View looking north from Rock Creek and Potomac Parkway, November 2014 Design.



Figure 8: View looking south, November 2014 Design.



Figure 9: View looking south from River Terrace, November 2014 Design.

**Appendix B: Project Area**



## Appendix C: Area of Potential Effects




Area of Potential Effects (APE)

Buildings
1 John F. Kennedy Center for the Performing Arts
2 Old Naval Observatory
3 Watergate Complex

Structures
4 Arlington Memorial Bridge and Related Features
5 Lincoln Memorial

Sites
6 Arlington Ridge Park

Districts
7 George Washington Memorial Parkway
8 Rock Creek and Potomac Parkway
East and West Potomac Parks Historic District
Georgetown Historic District
Potomac Annex Historic District

Cultural Landscapes
Lady Bird Johnson Park
Lincoln Memorial Grounds
Memorial Avenue Corridor
Theodore Roosevelt Island
Arlington Ridge Park

## Appendix D: List of Consulting Parties

### Advisory Neighborhood Commissions

Ms. Rebecca Coder
ANC Commissioner, 2A02
2501 M Street, NW #721
Washington, DC 20037
2A02@anc.dc.gov

Mr. Armando Irizarry
ANC Commissioner, 2A04
2475 Virginia Ave NW #911
Washington, DC 20037
2A04@anc.dc.gov

Mr. Graham Michael Galka
ANC Commissioner, 2A05
2450 Virginia Avenue, NW, #319
Washington, DC 20037
2A05@anc.dc.gov

### Agency/Neighborhood/Interest Groups

American Institute of Architects
American Society of Landscape Architects
Committee of 100 on the Federal City
Cultural Tourism D.C.
D.C. Chamber of Commerce
D.C. Preservation League
D.C. State Historic Preservation Office
Downtown D.C. Business Improvement District
Federal City Council
Foggy Bottom Association
Georgetown Business Improvement District
National Association for Olmsted Parks
National Coalition to Save Our Mall
National Parks Conservation Association
National Recreation and Park Association
National Trust for Historic Preservation
Smithsonian Institution
Trust for the National Mall
Virginia State Historic Preservation Office
Washington Area Bicyclist Association
U.S. Army Corps of Engineers
U.S. Commission of Fine Arts

### Individuals/Interested Parties

Ronald Cocome
Kent Cooper
Elizabeth Elliott
Cynthia Field
John Fondersmith
Edwin L. Fountain
Ellen Gold
Don A. Hawkins
Thomas Jenson
Iris Miller
Arthur Cotton Moore
Catherine Nagel
Peter Penzer
Russell Preble
Mark Sanchez
Barbara Spillinger
Art Spitzer
Joe Steinbock
Richard Westbrook

**Appendix E: Summary of Adverse Effects Determination**

| | Alternative A: No Action | Alternative B: Three Land-based Pavilions | Alternative C1: Two Land-based Pavilions Plus River Pavilion with At-Grade Crossing | Alternative C2: Two Land-based Pavilions Plus River Pavilion with Bridge Crossing |
|---|---|---|---|---|
| **Resource** | | | | |
| Arlington Memorial Bridge and Related Structures | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| Arlington Ridge Park | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| East and West Potomac Parks Historic District | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| George Washington Memorial Parkway | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| Georgetown Historic District | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| John F. Kennedy Center for the Performing Arts | No adverse effect | ***Adverse Effect***<br>*-Removal of small section of curtain wall for projector window*<br>*-Panoramic views from the South and West Terrace and views of the Washington Monument and Lincoln Memorial would be interrupted by the land pavilions and the canopy* | ***Adverse Effect***<br>*-Removal of small section of curtain wall for projector window*<br>*-Panoramic views from the South and West Terrace and views of the Washington Monument and Lincoln Memorial would be interrupted by the land pavilions and the canopy*<br>*-Views from the West Terrace looking south and southwest towards the river would be interrupted by the River Pavilion* | ***Adverse Effect***<br>*-Removal of small section of curtain wall for projector window*<br>*-Panoramic views from the South and West Terrace and views of the Washington Monument and Lincoln Memorial would be interrupted by the land pavilions and the canopy*<br>*-Views from the West Terrace looking south and southwest towards the river would be interrupted by the River Pavilion* |
| Lady Bird Johnson Park | No adverse effect | No adverse effect | No adverse effect | No adverse effect |

**Summary of Adverse Effects Determination (cont.)**

| | **Alternative A: No Action** | **Alternative B: Three Land-based Pavilions** | **Alternative C1: Two Land-based Pavilions Plus River Pavilion with At-Grade Crossing** | **Alternative C2: Two Land-based Pavilions Plus River Pavilion with Bridge Crossing** |
|---|---|---|---|---|
| **Resource** | | | | |
| Lincoln Memorial | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| Lincoln Memorial grounds | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| Memorial Avenue corridor | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| Old Naval Observatory | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| Potomac Annex Historic District | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| Rock Creek and Potomac Parkway | No adverse effect | No adverse effect | ***Adverse Effect***<br>*- Views of the Potomac River and Theodore Roosevelt Island from sections of the RCPP Roadway and Trail would be blocked by the River Pavilion*<br>*- Trail spur would impact the perceived width and character of the RCPP Trail and would alter paving and landscaping* | ***Adverse Effect***<br>*- Views of the Potomac River and Theodore Roosevelt Island from sections of the RCPP Roadway and Trail would be blocked by the River Pavilion*<br>*- Access bridge would extend across northbound and southbound lanes of RCPP Roadway and Trail and be a visual distraction from intended views of the Potomac River and Theodore Roosevelt Island*<br>*- Trail spur would impact the perceived width and character of the RCPP Trail and would alter paving and landscaping* |
| Theodore Roosevelt Island | No adverse effect | No adverse effect | No adverse effect | No adverse effect |
| Watergate | No adverse effect | No adverse effect | No adverse effect | No adverse effect |