# EXHIBIT 35

**MEMORANDUM OF AGREEMENT**
**BETWEEN**
**THE NATIONAL CAPITAL PLANNING COMMISSION**
**AND**
**THE SMITHSONIAN INSTITUTION**
**REGARDING**
**IMPLEMENTATION OF THE REQUIREMENTS OF**
**THE NATIONAL ENVIRONMENTAL POLICY ACT**

## 1. PARTIES AND AUTHORITIES

This Memorandum of Agreement (MOA) is entered into by and among the National Capital Planning Commission (NCPC or Commission) and the Smithsonian Institution (Smithsonian), referred to collectively as the "Parties" and individually as a "Party," pursuant to 40 U.S.C.§§ 8701 et seq., which established NCPC as the central planning and zoning authority for federal projects located in the District of Columbia, and pursuant 20 U.S.C. §§ 41 et seq., which established the Smithsonian.

## 2. BACKGROUND

a. This MOA is the shared understanding of the Parties regarding the process to be followed to comply with the National Environmental Policy Act (NEPA) (42 U.S.C. 4371); regulations promulgated by the Council on Environmental Quality (CEQ) (40 C.F.R. 1500-1501) (CEQ Regulations); and regulations promulgated by NCPC (82 C.F.R. 45421, as amended by 82 C.F.R. 48609) (NCPC NEPA Regulations or Regulations).

b. NEPA requires Federal agencies in the executive branch of the federal government to undertake an assessment of the effects of a proposed action before making a final decision to determine if the action has a significant effect on the quality of the human environment. NEPA's procedural requirements apply, to among others, decisions to approve projects or programs.

c. CEQ Regulations define federal agency as all agencies of the federal government. 40 C.F.R. 1508. By statute, NCPC is designated an independent establishment within the federal government. An independent establishment of the federal government falls within the CEQ definition of federal agency. This means NCPC must comply with the requirements of NEPA.

d. The Smithsonian characterizes itself as trust instrumentality of the United States. The Smithsonian is not an agency or an establishment within the executive branch. See 20 U.S.C. 42 (the Smithsonian Board of Regents includes six members of and the Chief Justice of the United States); *Dong v. Smithsonian*, 125 F.3d 877, 879-881 (D.C. Cir. 1997). As such, CEQ acknowledges, Smithsonian does not fall within the definition of federal agency contained in its regulations.

e. Consistent with NCPC's authority, the Smithsonian submits projects it undertakes in the District, for NCPC's approval, thus triggering NCPC's need to undertake a NEPA assessment. The NEPA assessment may take the form of either the application of a Categorical Exclusion, an Environmental Assessment (EA) or an Environmental Impact Statement (EIS) depending upon the complexity of the project. Although the Smithsonian is not subject to NEPA, it is the project owner with an interest in the outcome of the NEPA process.

f. In September 2017, NCPC adopted revised, updated NEPA Regulations. These Regulations recognized Smithsonian, among others, as a "Non-federal Agency." See, NCPC NEPA Regulations, § 601.3. The Regulations define a Non-federal agency for NEPA purposes as those applicants outside the definition of federal agency that prepare plans for or undertake projects on land within the National Capital Region subject to NCPC's jurisdiction. *Id.* The Regulations further require Non-federal Agencies to enter into a MOA with NCPC either as a programmatic MOA or a MOA to address a specific project. *Id.* § 601.5(b). NCPC's NEPA Regulations require the MOA to address, without limitation, roles and responsibilities; project information necessary to prepare the proper environmental document (EA or EIS); project timelines and submission schedules; submission of periodic reports on the implementation of mitigation measures; principal contacts and contact information; and a mechanism for dispute resolution.

g. Section 106 of the National Historic Preservation Act (NHPA) requires agencies to review undertakings to determine their effect on historic resources and to mitigate any adverse effects. See, 54 U.S.C. 306107. Regulations promulgated by the Advisory Council on Historic Preservation (ACHP) establish the process agencies must follow to meet the requirements of Section 106. See 36 CFR Part 800. (ACHP Regulations).

h. For purposes of both NHPA and ACHP Regulations, agency means an authority of the Government of the United States, whether or not it is within or subject to review by another agency. See, 5 U.S.C. 551. An undertaking means a project, activity or program funded in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency, those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval. See, 36 CFR § 800.16(y).

i. When NCPC reviews federal projects in the District requiring its approval, it must comply with Section 106 of the NHPA.

j. Congress and Smithsonian agree Smithsonian is not an agency within the definition of the NHPA and ACHP Regulations. However, to rectify this, Congress passed the Smithsonian Facilities Authorization Act. See, Pub. Law No. 108-72, 117 Stat. 888 (August 15, 2003) (Act). Pursuant to section 3(c)(2) of the Act, the Smithsonian is "deemed to be an agency for purposes of compliance with regulations promulgated by the Advisory Council on Historic Preservation pursuant to section

106 of the National Historic Preservation Act" for projects in the District requiring NCPC review and approval. This means Smithsonian must comply with Section 106 of the NHPA for those projects it submits to NCPC for review and approval in the District.

k. Section 1500.2(c) of CEQ's Regulations obligate agencies to integrate the requirements of NEPA with other planning and environmental review procedures required by law and to run the procedures concurrently. This requirement of concurrence extends to Section 106 of the NHPA.

l. Based on the above, the Parties agree to comply with the terms and conditions for implementing NEPA and Section 106 of the NHPA as set forth in this MOA.

## 3. INITIATING THE NEPA PROCESS

a. The Smithsonian shall formally notify NCPC of a pending Smithsonian project subject to NCPC's authority and NEPA. The notification shall be made as soon as all requisite internal Smithsonian approvals are obtained and the Smithsonian has completed sufficient planning and design to determine whether the project might require NEPA review, but no later than the Smithsonian's Pre-Submission Briefing.

b. The Smithsonian shall refrain from holding meetings on the project with cooperating or consulting parties, until after Smithsonian and NCPC confer and outline the rudiments of the NEPA process.

c. The Parties agree, consistent with §§ 601.4(b)(1)-(2) of NCPC's NEPA Regulations, upon initiation of the NEPA process, NCPC shall serve as the lead agency and Smithsonian shall be identified as the project owner. As lead agency, NCPC's obligations shall be those outlined in § 601.5(b) of NCPC's NEPA Regulations. As the project owner, the Smithsonian agrees to cooperate to the maximum extent and provide all information requested by NCPC whether listed or not in this MOA to ensure NCPC's compliance with its NEPA obligation.

d. As part of its submission of a project for initial review (Concept or Preliminary, if Concept is not required), the Smithsonian shall provide NCPC in writing, without limitation, the following information:

   i. The form of environmental assessment (EA or EIS) the Smithsonian believes appropriate. In making this recommendation, the Smithsonian shall be guided by the criteria set forth in §§ 601(13)-(14) and 601(19) of NCPC's NEPA Regulations.

   ii. A description of the project including maps, drawings, and other reference materials that help explain the project.

   iii. The purpose and need for the project.

iv. Any proposed alternatives under consideration.

v. Any resources identified on the project site and a list of potential impacts identified.

vi. A list of proposed cooperating agencies and stakeholders (public and private).

vii. A timeline identifying key milestones of the environmental/project review process. The milestones shall be keyed to the submission schedule set forth in § 601.8(b)-(e) of NCPC's NEPA Regulations.

e. NCPC staff shall review the information provided by the Smithsonian, and if staff deems the information sufficient for initiation of the scoping process, NCPC shall advise the Smithsonian and the Parties shall proceed with the next phase of NEPA implementation.

f. If NCPC determines the information deficient, it shall consult with the Smithsonian to remedy the deficiency. Upon correction of the deficiencies, NCPC shall advise the Smithsonian and the Parties shall proceed with the next phase of NEPA implementation.

**4. PREPARATION OF AN EA**

a. Scoping for an Environmental Assessment

i. If NCPC determines an EA is required, the Executive Director of NCPC shall determine if a public scoping process is appropriate.

1. If public scoping is deemed appropriate, NCPC shall prepare and publish a notice of intent (NOI) to prepare an EA in a media source with widespread circulation and on NCPC's website and the Smithsonian's project website, if any. The NOI shall be consistent with the requirement of § 601.15(c) of NCPC's NEPA Regulations and include the date, time, and location of one or more public scoping meetings.

2. Following the public scoping meeting(s), the Smithsonian shall provide NCPC with a written document addressing all the issues raised during the scoping period. Thereafter, the Parties shall determine which comments are significant and should be addressed in the EA and which are not. Issues deemed not significant shall be briefly discussed and dismissed in the EA.

3. Based on public comments received, NCPC and the Smithsonian shall determine if existing alternatives require elimination or revision, or if new alternatives should be developed. Thereafter, the Smithsonian shall take appropriate action to add, eliminate or revise alternatives.

ii. If the Executive Director determines public scoping is not necessary, the Parties shall commence preparation of the EA.

b. Preparing a Draft Document

i. To facilitate preparation of a draft EA (Draft EA), the Smithsonian shall submit a series of written reports to NCPC for review and discussion between the Parties. The reports shall address the subjects set forth in § 601.15(a) of NCPC's NEPA Regulations and outlined below. As certain of the information may have been provided by the Smithsonian at the time of its initial contact with NCPC, the Smithsonian shall review the information and revise or update as necessary.

1. A description of the project.

2. The purpose and need for the project.

3. A description of all alternatives considered including a no action alternative.

4. A description of the affected environment.

5. A description of the environmental impacts of the project and the alternatives.

6. A description of all mitigation measures proposed to mitigate environmental impacts.

7. A list of all parties consulted in the preparation of the Draft EA.

ii. In its preparation of the reports outlined in section 4.a.i above, the Smithsonian shall be mindful of NCPC's policy to streamline the NEPA process and provide the information in a clear, concise manner.

iii. NCPC staff shall review the information provided by the Smithsonian, and if staff deems the information sufficient, NCPC shall advise the Smithsonian and the Parties shall proceed with the next step of NEPA implementation.

iv. If NCPC determines the information deficient, it shall consult with the Smithsonian and remedy the deficiencies. Upon correction of the deficiencies, the Parties shall proceed with the next step of NEPA implementation.

c. Circulating the Draft EA for Public Comment

Consistent with § 601.15(d) of NCPC's NEPA Regulations, NCPC may circulate the Draft EA for public comment. A public comment period of thirty days shall begin when the Executive Director of NCPC announces the availability of the Draft EA on the NCPC website and the Smithsonian's project website, if any. Thereafter, NCPC and the Smithsonian shall address the comments received and make necessary changes to the Draft EA itself or prepare an errata sheet to reflect those comments deemed significant. To assist the revision process, the Smithsonian shall prepare a document listing the public comments received and the response taken by the Parties.

d. Finalizing the EA, Issuing a Finding of No Significant Impact (FONSI)

i. Following the public comment period on the Draft EA, or if no public comment period is held, NCPC shall prepare and issue a final EA. Thereafter, if a FONSI is the logical conclusion flowing from the EA, the Smithsonian shall work with NCPC to prepare a FONSI. If the EA demonstrates a need for an EIS, NCPC and the Smithsonian shall prepare an EIS.

ii. Consistent with the requirements of § 601.16(a), the contents of a FONSI shall include the following:

1. A brief statement of the reasons why the proposed project will not have a significant effect upon the environment.

2. A summary of the EA, or in the alternative, the EA shall be included as an attachment.

3. A description of mitigation measures if any to be undertaken by the Smithsonian as the project owner and a schedule for their implementation.

iii. In certain limited circumstances described in §§ 1501.4(e)(2)(i)-(ii) of CEQ's Regulations, the FONSI shall be available for public review thirty (30) days before the Commission makes a final determination on the Smithsonian's project.

iv. NCPC shall publish the FONSI on its website and the Smithsonian will publish the FONSI on its project website, if any, seven calendar days before

the Commission takes action on the underlying project at a scheduled meeting.

e. Supplemental EAs

The rules governing the preparation of a Supplemental EA in § 601.17 shall apply to an EA prepared for Smithsonian projects.

**5. PREPARATION OF AN EIS**

a. Scoping for an Environmental Impact Statement

i. If NCPC determines an EIS is required for the project, it shall prepare and publish a Notice of Intent (NOI) to prepare an EIS in the Federal Register. The NOI shall be consistent with the requirements of § 601.23(b) of NCPC's NEPA Regulations and include the dates, time, and location of one or more public scoping meetings. The NOI will be published on the NCPC website and the Smithsonian's project website, if any.

ii. Notice of public scoping meetings shall also be provided by mail to stakeholders and interested parties and published in a media source with widespread circulation.

iii. Following the public meetings, the Smithsonian shall provide NCPC with a written document addressing all the issues raised during the scoping period. Thereafter, the Parties shall determine which comments are significant and should be addressed in the EIS and which are not. Issues deemed not significant shall be briefly discussed and dismissed in the EIS.

iv. Based on public comments received, NCPC and the Smithsonian shall determine if existing alternatives require elimination or revision or new alternatives should be developed. Thereafter, the Smithsonian shall take appropriate action to effect any changes to or elimination or addition of alternatives.

b. Preparing a Draft Document

i. To facilitate preparation of a draft EIS (Draft EIS), the Smithsonian shall submit a series of written reports to NCPC for review and discussion between the Parties. The reports shall provide the information set forth in § 601.22 ofeNCPC's NEPA Regulations and outlined below. As certain of the information may have been provided by the Smithsonian at the time of its initial contact with NCPC, the Smithsonian shall review the information and revise or update as necessary.

1. A cover sheet with a list of responsible and Cooperating Agencies; the title of the proposed action that is the subject of the EIS; the name, address, and telephone number of the NCPC point of contact; the designation as to whether the statement is a draft, final, or draft or final supplement; a one paragraph abstract of the EIS; and the date by which comments must be received.

2. A summary accurately summarizing the information presented in the EIS, focusing on the main conclusions, areas of controversy, and the issues to be resolved.

3. A table of contents.

4. A statement of the purpose of and need for the action.

5. The identification of alternatives with a brief description and supporting documentation for all alternatives including the proposed action; the no action alternative; all reasonable alternatives, considered but eliminated and the reason for their elimination; the Smithsonian's preferred alternative, if one exists; and the environmentally preferred alternative.

6. The identification of the environment affected by the proposed action and the alternatives considered. This section shall include, if applicable, other activities in the area affected by or related to the proposed action.

7. The identification of environmental consequences focused on the environmental impacts of the alternatives; any adverse environmental effects which cannot be avoided if the proposal is implemented; the relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity; and any irreversible commitments of resources if the proposal is implemented.

    a. The impacts shall be discussed in terms of direct, indirect and cumulative effects and their significance, as well as any appropriate means to mitigate adverse impacts.

    b. The discussion shall also include issues and impact topics considered but dismissed to reveal non-impacted resources. Resource areas and issues requiring consideration shall include those identified in the scoping process, and, without limitation, the following:

i. Possible conflicts between the proposed action and the land use plans, policies, or controls (local, state, or Indian tribe) for the area concerned.
ii. Natural and biological resources including topography, hydrology, soils, flora, fauna, floodplains, wetlands, and endangered species.
iii. Air quality.
iv. Noise.
v. Water resources including wastewater treatment and storm water management.
vi. Utilities including energy requirements and conservation.
vii. Solid waste and hazardous waste generation/removal.
viii. Community facilities.
ix. Housing.
x. Transportation network.
xi. Socio-cultural and economic environments.
xii. Environmental Justice and the requirements of Executive Order 12898 (Federal Actions to Address Environmental Justice in Minority Populations).
xiii. Urban quality and design of the built environment including visual resources and aesthetics.
xiv. Historic and cultural resources to include documentation of the results of the Section 106 Consultation process.
xv. Public health and safety.

8. A list of preparers, which shall include all pertinent organizations, agencies, individuals, and government representatives primarily responsible for the preparation of the EIS and their qualifications.

9. An index structured to reasonably assist the reader of the Draft or Final EIS in identifying and locating major topic areas or elements of the EIS information.

10. An appendix consisting of material prepared in connection with the EIS (as distinct from material which is incorporated by reference) and material which substantiates any analysis fundamental to the EIS. The appendix shall be posted on NCPC's website and the Smithsonian's project website, if any.

ii. In its preparation of the documents outlined in section 5.b.i above, the Smithsonian shall be mindful of NCPC's policy to streamline the NEPA process and provide the information in a clear, concise manner.

iii. NCPC staff shall review the information provided by the Smithsonian, and if staff deems the information sufficient, NCPC shall advise the Smithsonian and the Parties shall proceed with the next step of NEPA implementation.

iv. If NCPC determines the information deficient, it shall consult with the Smithsonian to remedy the deficiencies. Upon correction of deficiencies, the Parties shall proceed with the next step of NEPA implementation.

c. <u>Circulating the Draft EIS for Public Comment</u>

i. Consistent with § 601.23(c) of NCPC's NEPA Regulations, NCPC shall circulate the Draft EIS for public comment. The public comment period shall generally run for forty-five (45) days and shall begin when the Executive Director shares the Draft EIS with the Environmental Protection Agency (EPA) in anticipation of EPA's publication of a Notice of Availability (NOA). The Draft EIS will be posted on NCPC's website and the Smithsonian's project website, if any.

ii. NCPC shall hold at least one public meeting during the public comment period. The public meeting shall be announced at least thirty (30) days prior to the meeting. The announcement shall identify the subject of the Draft EIS and the meeting date, location, and time.

iii. Following the public meeting(s), consistent with the requirements § 601.24 of NCPC's NEPA Regulations, NCPC and the Smithsonian shall address the comments received and make necessary changes to the Draft EIS to reflect those comments deemed significant. To assist the revision process, the Smithsonian shall prepare a document listing the public comments received and the response taken by the Parties.

d. <u>Finalizing the EIS, Issuing a Record of Decision (ROD)</u>

i. Following the public comment period on the Draft EIS, NCPC shall prepare and issue a final EIS (Final EIS). The Commission shall take action on the Final EIS no sooner than thirty (30) days after EPA publication of the NOA for the Final EIS.

ii. Consistent with the requirements of § 601.25 of NCPC's NEPA Regulations, if the Commission decides to recommend approval of the proposed action addressed in the Final EIS, NCPC with the Smithsonian assistance shall prepare a ROD for the Commission Chairman's signature. Pursuant to § 601.25 of NCPC's NEPA Regulations, the contents of the ROD shall include the following:

1. A statement of the decision.

2. The identification of alternatives considered environmentally preferable based on all relevant factors including the technical planning and economic considerations and the Commission's statutory mission. The ROD shall identify the factors balanced to reach a decision and the influence various factors had on the decision.

3. A statement that all practicable means to avoid or minimize environmental harm from the alternative selected have been adopted, and if not, why they have not.

4. A monitoring and enforcement program that summarizes mitigation measures and includes the dates by which they shall be implemented.

5. The date of issuance.

6. Chairman's Signature

iii. The contents of the ROD proposed for Commission adoption shall be summarized in the Executive Director's Report (EDR) presented to the Commission. A full version of the ROD shall be included as an Appendix to the EDR. The ROD, independently of the EDR, shall be made available to the public for review fourteen (14) calendar days prior to the Commission's consideration of the proposed action for which the EIS was prepared.

e. <u>Supplemental EISs</u>

The rules governing the preparation of a Supplemental EIS in § 601.26 of NCPC's NEPA Regulations shall apply to an EA prepared for Smithsonian projects.

**6. INCORPORATION OF SECTION 106 OF THE NATIONAL HISTORIC PRESERVATION ACT**

a. NCPC and the Smithsonian shall integrate the requirements of NEPA as set forth in this MOA with the requirements of Section 106 of the National Historic Preservation Act (54 U.S.C. 306108) (NHPA) to ensure that the two procedures run concurrently.

b. Both an EA and an EIS shall incorporate a discussion of the Section 106 results, and the executed Section 106 Programmatic Agreement or Memorandum of Agreement shall be included as an attachment to an EA or an EIS.

**7. COOPERATION**

a. NCPC and the Smithsonian agree to work in a close, cooperative manner to implement the NEPA process for Smithsonian projects. This includes, among others, timely provision of information and responses thereto and use of best efforts to comply with milestones established by the Parties at the outset of the NEPA process.

b. Cooperative efforts shall also include joint meetings with and interaction between NCPC, Smithsonian and any consultants retained by the Smithsonian to help the Smithsonian with compliance with NCPC's NEPA obligation recognizing the consultant works for and can only be tasked by the Smithsonian.

c. The Parties agree that any disputes arising under this MOA, shall be resolved, unless otherwise provided by law or regulation, by the Parties through interagency, good faith negotiations starting at the working levels of each organization, and if necessary, by elevating such disputes within the respective organizations. If resolution at higher levels is unsuccessful, the parties may participate in mediation.

**8. MISCELLANEOUS**

a. This MOA shall be effective as of the latest date of signature by the Parties.

b. This MOA and its effectiveness are governed by applicable laws and regulations and subject to the availability of funds. This MOA is not an obligation of funds in advance of appropriation of such funds, and it shall not constitute authority for the expenditure of funds.

c. The Parties to this MOA certify that each person acting as a signatory for a Party has full authority to represent and bind their respective entities to the terms and conditions of this MOA.

d. This MOA may be amended only upon the written agreement of both Parties.

**9. SIGNATURES**

**IN WITNESS WHEREOF**, the parties hereby execute this MOA to become effective on the last written date below.

**NATIONAL CAPITAL PLANNING COMMISSION**

By: ______________________ Date: 12/20/18

Marcel C. Acosta
Executive Director

**SMITHSONIAN INSTITUTION**

By: ______________________ Date: 12/17/18

Albert G. Horvath
Chief Operating Officer and Under Secretary for Finance and Administration