**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**D.C. PRESERVATION LEAGUE**, *et al.*,

*Plaintiffs*,

v.

**BOARD OF TRUSTEES OF THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS**, *et al.*,

*Defendants*.

Civil Action No. 1:26-cv-00981

**DECLARATION OF ELIZABETH S. MERRITT**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct and based on my personal knowledge:

1. My name is Elizabeth S. Merritt, and I am Deputy General Counsel at the National Trust for Historic Preservation in the United States ("National Trust"). I have served in the National Trust's Law Department for almost 42 years, since May 1, 1984, focused on advocacy to protect historic places throughout the nation, in both the administrative and judicial arenas. As a result, I am very familiar with the National Trust's programs, and especially its advocacy and litigation activities. I am authorized to submit this declaration on behalf of the National Trust, and the facts set forth in this declaration are based upon my personal and professional knowledge. If called as a witness in this proceeding, I could and would testify competently under oath with regard to the facts in this declaration.

2. The National Trust is a private charitable, educational, nonprofit corporation chartered by Congress in 1949 to further the historic preservation policies of the United States,

and to "facilitate public participation" in the preservation of historic properties. *See* 54 U.S.C. § 312102(a).

3. Starting in 2013, the National Trust leased the top two floors of the historic Watergate Office Building—a lease we still hold—and for a full decade our headquarters offices were located there. As a result of being part of the Watergate complex, immediately adjacent to the John F. Kennedy Center for the Performing Arts, our staff frequently visited and enjoyed the Kennedy Center and attended performances there. Our staff also had the opportunity to pass by the Kennedy Center on a daily basis as we commuted to and from our offices at the Watergate, so we were able to enjoy and appreciate the Kennedy Center's iconic architecture every day.

4. As part of the National Trust's public interest advocacy program, the National Trust has often participated in litigation to enforce federal, state, and local laws that protect historic places. Since 1970, the National Trust has formally participated in hundreds of cases in state and federal courts around the country, both as a plaintiff and as *amicus curiae*, and occasionally as an intervening defendant.

5. In addition, the Chair of the National Trust is designated by Congress as a member of the Advisory Council on Historic Preservation ("ACHP"), which is responsible for working with federal agencies to implement compliance with Section 106 of the National Historic Preservation Act ("NHPA"). 54 U.S.C. §§ 304101(a)(9), 304108(a).

6. The National Trust has a long history of participation as a consulting party under Section 106 of the NHPA, pursuant to 36 C.F.R. §§ 800.2(c)(5) and 800.3(f)(3). In my decades of personal experience at the National Trust, the National Trust's participation as a consulting party under Section 106 of the NHPA has been highly influential. The National Trust's advocacy

often results in modifications to proposed projects that reduce their adverse effects, and in the development of meaningful mitigation when adverse effects are not avoided.

7. The National Trust has a long history of active involvement in the federal project and planning review processes conducted by the National Capital Planning Commission ("NCPC"). For example, the National Trust has previously submitted testimony or comments to the NCPC over the course of many years regarding the following matters:

- Written comments and on-line testimony regarding the proposed White House Ballroom and "East Wing Modernization" (Comment Letter Feb. 23, 2026; CEO Testimony Mar. 5, 2026)
- Adverse impacts of McMillan Park development on President Lincoln's Cottage (Nov. 7, 2014);
- Comments regarding the Height Act (Oct. 25 and Nov. 19, 2013);
- Master Plan for Homeland Security Department headquarters at St. Elizabeths Hospital campus (Nov. 1, 2007 and Jan. 8, 2009);
- Proposed Vietnam Veterans Memorial Visitor Center (Dec. 6, 2007);
- Courtyard roof for Old Patent Office Building (June 2, 2005); and
- Closing of Pennsylvania Avenue in front of the White House (Mar. 12, 2003).

8. In addition, I personally have submitted written or in-person testimony to NCPC on behalf of the National Trust regarding the following matters:

- Opposing the proposed "veil" on the Capital One Arena (July 31, 2025);
- Opposing demolition of historic officers' housing at Fort McNair (Feb. 2, 2023);
- Redevelopment of the McMillan Park site (Nov. 6, 2014);
- Proposed Vietnam Veterans Memorial Visitor Center (Aug. 3, 2006 and June 3, 2009);
- Courtyard roof for Old Patent Office Building (Sept. 8, 2005); and
- Washington Monument security and visitor facilities (May 1, 2003).

9. The National Trust also has a long history of active involvement in the federal project and planning review processes conducted by the Commission of Fine Arts ("CFA"). For example, I personally submitted testimony or comments to the CFA on behalf of the National

Trust regarding the Master Plan for St. Elizabeths West Campus (DHS headquarters) (Nov. 20, 2008), and the Washington Monument Security Improvements and Visitor Facility (Sept. 19, 2002). Most recently, the National Trust submitted comments to the CFA regarding the proposed White House Ballroom and "East Wing Modernization" on February 18, 2026.

10. The National Trust is also routinely and actively involved in review of environmental assessments ("EA") and environmental impact statements ("EIS") prepared by federal agencies pursuant to the National Environmental Protection Act ("NEPA").

11. The National Trust frequently submits comments on NEPA documents, and is often involved in enforcing federal agency compliance with NEPA. *See, e.g.*, *Maryland Chapter of the Sierra Club, et al. v. Federal Highway Admin.*, No. 24-1447 (4th Cir., argued Jan. 28, 2025); *National Parks Conservation Ass'n, et al. v. Semonite,* No. 18-5179 (D.C. Cir. Mar. 1, 2019); *Coalition Against a Raised Expressway (CARE), et al. v. Dole,* 835 F.2d 803 (11th Cir. 1988); *Druid Hills Civic Ass'n, et al. v. Federal Highway Admin.,* 772 F.2d 700 (11th Cir. 1985); *Citizen Advocates for Responsible Expansion, Inc. (I-CARE), et al. v. Dole,* 770 F.2d 423 (5th Cir. 1985); *City of South Pasadena, et al. v. Slater*, 56 F. Supp. 2d 1106 (C.D. Cal. 1999).

12. On March 16, 2026, Carol Quillen, the President and CEO of the National Trust, sent a letter to Donald J. Trump in his capacity as Chair of the Board of the Kennedy Center, urging him to submit his proposed plans for the Kennedy Center to the NCPC and CFA for review. To date, the National Trust has not received a response to this letter. Because of the National Trust's concern regarding the failure to initiate review of the proposed Kennedy Center plans, I personally reached out to Meghan Hottel-Cox, General Counsel and Secretary at the NCPC, to inquire as to whether the NCPC had received any submissions regarding the Kennedy Center project. In response to my email inquiry on March 18, 2026, Ms. Hottel-Cox responded

by email on March 19, stating that "NCPC has not received any information or a submission regarding the Kennedy Center at this time."

13. Assuming that the Defendants do submit plans for the Kennedy Center project to the NCPC and CFA, the National Trust intends to participate actively in the public comment process, including participation as a consulting party under Section 106 of the NHPA, pursuant to 36 C.F.R. §§ 800.2(c)(5) and 800.3(f)(3). In addition, the National Trust intends to submit comments in response to any NEPA document that is released to the public regarding the Kennedy Center Project.

14. Among other things, the National Trust intends to comment during the administrative review process that the Kennedy Center defendants have wrongfully attempted to avoid compliance with Section 106, and have "intentionally significantly adversely affected" the historic Kennedy Center by painting the columns around the building white, and by adding the name of Donald J. Trump to the façade of the building, without the required review and compliance with Section 106. As a result, the NCPC and other agencies are required to deny approval of the proposed project, unless and until the agencies complete an additional consultation process with the ACHP, in which we would participate, to develop specific mitigation sufficient to support a determination that circumstances justify granting the approval despite the adverse effects on the Kennedy Center building, pursuant to 54 U.S.C. § 306113 and 36 C.F.R. § 800.9(c).

15. In connection with the National Trust's request for injunctive relief in this case, the National Trust requests a waiver of any security bond requirement.

16. Because of the National Trust's nonprofit status and limited funds, we have a policy against paying attorneys' fees, other than out-of-pocket expenses, when we participate in

advocacy litigation. Instead, we rely on *pro bono* representation when outside counsel is needed, as in this case, or public interest lawyers whose discounted fees can be covered by other organizations.

17. When the National Trust seeks injunctive relief in a case, the Trust has always requested (and virtually always received) a waiver of the security bond requirement based on the "public interest" nature of our litigation. The National Trust's litigation program is aimed at enforcing and vindicating the rights of the public, which are reflected in federal, state, and local laws protecting historic properties. This policy is in furtherance of the National Trust's congressional charter, directing the Trust to "facilitate public participation" in historic preservation. 54 U.S.C. § 312102(a).

18. The imposition of a security bond—as a condition for obtaining injunctive relief to temporarily delay construction or demolition activities that would harm historic resources—would have a direct chilling effect on the ability of the National Trust, and other public interest plaintiffs, to advance the public interest and enforce compliance with historic preservation laws through litigation. If the financial burden of vindicating public rights were to fall on nonprofit organizations that bring enforcement actions, such as the National Trust, then the incentives intentionally created by Congress to encourage citizen suits and private attorney general actions, (*see, e.g.*, 54 U.S.C. § 307105 (NHPA); 28 U.S.C. § 2412 (EAJA)), would be significantly reduced or eliminated.

19. The National Trust could not post a substantial injunction bond without diverting funds intended for other historic preservation programs.

20. Alternatively, the National Trust would simply not be able to post such a bond at all, and would be unable to secure the injunction on which it was conditioned.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 27th day of March, 2026.

Elizabeth S. Merritt

Elizabeth S. Merritt
Deputy General Counsel
National Trust for Historic Preservation in the United States
600 14th Street NW, Suite 500
Washington, DC 20005