**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DC PRESERVATION LEAGUE**, et al.,<br>*Plaintiffs*,<br>v.<br>**BOARD OF TRUSTEES OF THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS**, et al.,<br>*Defendants*. | Civil Action No.1:26-cv-00981 |

**DECLARATION OF REBECCA MILLER, EXECUTIVE DIRECTOR ON BEHALF OF DC PRESERVATION LEAGUE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

I, Rebecca Miller, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct and based on my personal knowledge:

1. My name is Rebecca Miller. I am the Executive Director of DC Preservation League ("DCPL"). I have been employed by DCPL since 2003, and I have served in my current role since 2005. I am authorized to submit this declaration on behalf of DCPL.

2. In my capacity as Executive Director, I am responsible for the day-to-day operations of DCPL, in addition to serving as its lead advocate in carrying out its mission through research and documentation, project review, Section 106 of the National Historic Preservation Act ("NHPA") representation, and education and outreach programming. I have personal knowledge of the facts set forth in this declaration.

3. DCPL is a nonprofit corporation organized under the laws of the District of Columbia, with its principal office in Washington, D.C. DCPL was founded in 1971 as Don't Tear It Down, and changed its name in 1984. DCPL is exempt from federal tax under Section 501(c)(3) of the Internal Revenue Code.

4. DCPL's stated mission is to preserve, protect, and enhance, the historic and built environment of Washington, D.C., through advocacy and education.

5. In furtherance of this mission, DCPL's core programmatic activities include the research and documentation of historic properties in Washington, D.C., and nominating those properties to the DC Inventory of Historic Places; conducting educational programs such as walking tours, lectures, and webinars about the historic and architectural significance of culturally, historically, and architecturally significant buildings, structures, and landscapes in Washington, D.C.; providing technical assistance to communities seeking to preserve historic resources; review of major development projects affecting D.C.'s historic landmarks or historic districts; monitoring federal agency compliance with NHPA and the National Environmental Policy Act ("NEPA"); and participating as a consulting party in Section 106 review processes.

6. DCPL has a longstanding and direct institutional connection to the John F. Kennedy Center for the Performing Arts (the "Kennedy Center") in Washington, D.C.

7. DCPL regularly participates in federal consultation and review processes affecting the Kennedy Center, including NEPA and NHPA reviews and proceedings before the National Capital Planning Commission ("NCPC") and the Commission of Fine Arts ("CFA"). DCPL monitors proposed alterations to the Kennedy Center and its grounds, reviews project submissions, and submits comments on behalf of itself and its members. DCPL has devoted staff time and resources to these activities over the past twenty-two (22) years.

8. DCPL's members include architects, historians, landscape architects, architectural historians, preservationists, engineers, and other professionals who use and study the Kennedy Center as part of their professional work. DCPL has a particular institutional interest in the Kennedy Center because it has researched and documented Mid Century Modern buildings across Washington, D.C., hosted programing titled "DC Modern" that focused on this architecture, and researched and documented the Kennedy Center to produce a landmark nomination for submission to the DC Inventory of Historic Sites and the National Register of Historic Places.

9. DCPL takes legal action to protect threatened cultural sites and historic properties when necessary. *See, e.g., Cultural Heritage Partners, et al. v. Donald J. Trump, et al.*, No. 25-cv-03969 (D.D.C.) (2025). DCPL's engagement with the Kennedy Center is a core part of its institutional mission.

10. DCPL has actively sought to participate in the Section 106 consultation process for the proposed alterations to the Kennedy Center, which is eligible for the National Register of Historic Places. Defendants' failure to initiate or complete the required consultation has deprived DCPL of the opportunity to fulfill its core mission of participating in historic preservation review processes and advocating for the protection of significant cultural resources. This is not a matter of policy disagreement; DCPL's participation in Section 106 review is a core programmatic activity that Defendants' procedural failures have rendered impossible.

11. DCPL conducts educational tours, lectures, and webinars focused on Mid Century Modern architecture and its historic significance, and the Kennedy Center is an extremely important part of this design movement in Washington, D.C. The proposed alterations threaten to destroy or fundamentally alter the features that are the subject of DCPL's programs, including the Modernist exterior designed by Edward Durell Stone, the 200 exterior columns, the Grand Foyer, the arts center circulation, and the grounds and REACH Expansion designed by Edmund Hollander. DCPL has already been compelled to divert staff time from other programs, including those focused on Women's History, Black History and Washington, D.C.'s legacy businesses, to assess the impact on its Kennedy Center programming.

12. Defendants' actions have compelled DCPL to redirect more than sixty (60) hours from its ongoing monitoring of local projects and educational, technical assistance, research, and documentation programs to investigating Defendants' procedural failures at the Kennedy Center. These resources would otherwise have been devoted to research and

documentation of local landmarks, review of local development projects, planning the DCPL's 55th Anniversary events, and planning for public outreach and education programs focused on Washington, D.C. and the 250th Anniversary of our Nation.

13. DCPL has already been harmed by alterations that Defendants have completed without initiating legally required review. Specifically:

a. In or around September 2025, Defendants repainted the Kennedy Center's 200 exterior columns from their original gold color to white. These columns are an original and character-defining feature of the building's Modernist design by Edward Durell Stone, and they were integral to the D.C. State Historic Preservation Officer's 2012 determination that the Kennedy Center is eligible for the National Register of Historic Places. DCPL was not notified, consulted, or afforded the opportunity to comment on proposed character-defining changes to the Kennedy Center.

b. Defendants installed new exterior signage placing the name "Donald J. Trump" on the façade of the Kennedy Center above the name of President Kennedy, altering the building's physical features and its character as a living memorial to President Kennedy.

c. On December 18, 2025, the Board voted to rename the Kennedy Center to "The Donald J. Trump and The John F. Kennedy Memorial Center for the Performing Arts." DCPL was not afforded any opportunity to comment on this alteration.

14. On information and belief, Defendants undertook each of these alterations without consulting the D.C. State Historic Preservation Officer, without notifying the Advisory Council on Historic Preservation ("ACHP"), and without initiating Section 106 review, notwithstanding the Kennedy Center's eligibility for the National Register of Historic Places. Nor did Defendants seek review by NCPC or CFA prior to making these significant alterations.

15. On March 16, 2026, the Board of Trustees and its Chair, Donald J. Trump, announced that in less than four months, the Kennedy Center will close completely for two years. While closed, the Center's buildings and grounds will undergo major structural work, up to and including demolition and reconstruction (the "Project"). Defendants have stated that "preliminary work has been started" and that "significant construction work" is anticipated to begin after July 7, 2026.

16. On information and belief, the Project includes demolition of portions of the existing building, new construction, major reconstruction of the building's interior and exterior, removal or alteration of character-defining features including the marble façade, a multi-year closure of the building and public grounds, and use of the Kennedy Center's federal public grounds for construction staging.

17. The Project will irreparably harm DCPL because the Project will destroy or fundamentally alter the character-defining historic fabric of the Edward Durell Stone-designed Kennedy Center, permanently undermining DCPL's ability to fulfill its mission of preserving, protecting, and enhancing the historic and built environment of Washington, D.C., for current and future generations to enjoy. DCPL's research and documentation work, advocacy undertakings, and educational initiatives, depend on the continued existence and historic integrity of the Kennedy Center. DCPL hosts educational tours, lectures, and webinars that feature the Kennedy Center in its historic form, which will be irreparably impacted once the building is changed. Once the building's historic character is destroyed, it cannot be restored, and DCPL's work related to the Kennedy Center will be permanently impaired.

18. DCPL is further injured by Defendants' failure to follow legally required review procedures before proceeding with the Project. Specifically:

a. <u>Section 106 of the NHPA</u>. DCPL regularly participates in Section 106 consultation processes as a consulting party. Had Defendants initiated Section 106

review as required, DCPL would have sought consulting party status, submitted comments, and provided expert input on the effects of the Project on the Kennedy Center and adjacent historic properties, including the Rock Creek and Potomac Parkway. Defendants' failure to initiate this process has deprived DCPL of these procedural rights.

b. NEPA review. Had Defendants prepared an environmental assessment or environmental impact statement as required by NEPA, DCPL would have reviewed the draft analysis and submitted comments on the environmental impacts of the Project, including impacts on the monumental core, the historic parkway, and the Potomac River waterfront. No such review has been initiated and DCPL has been deprived of its procedural rights.

c. NCPC review. DCPL regularly participates in NCPC review processes for projects in Washington, D.C. Had Defendants submitted the Project to NCPC for review and approval as required by 40 U.S.C. §§ 8721–8722, DCPL would have provided comments to NCPC on the Project's impact on the Kennedy Center and its setting within the monumental core. No such submission has been made.

d. CFA review. DCPL regularly participates in CFA review processes. Had Defendants submitted the Project to CFA for advice as required by 40 U.S.C. § 9102, DCPL would have provided comments on the Project's impact on the appearance of the Kennedy Center and the federal monumental core. No such submission has been made.

19. Had the required procedures been followed, DCPL would have had a meaningful opportunity to present its concerns and expert knowledge about the impact of the Project before irreversible changes were and are made to this nationally significant site.

20. The injuries described above are directly caused by Defendants' actions and omissions. Defendants (the Board of Trustees, Donald J. Trump in his official capacity as Chair of the Board, and the Smithsonian Institution) have announced and begun advancing the Project without complying with the statutory requirements that trigger the review processes in which DCPL has a right to participate. Agency Defendants (NCPC, NPS, the Department of the Interior, Secretary Burgum, and the United States Army Corps of Engineers) have failed to initiate the reviews required by Section 106 of NHPA, NEPA, 40 U.S.C. §§ 8721–8722, and 40 U.S.C. § 9102, and have failed to withhold permits and approvals pending completion of those reviews.

21. DCPL will suffer irreparable harm absent a preliminary injunction. Once the historic fabric of the Kennedy Center is altered or destroyed, it cannot be restored to its original condition. The Kennedy Center's architectural and historic character, which forms the basis of its eligibility for the National Register of Historic Places, would be permanently compromised. The opportunity for meaningful public consultation, including DCPL's participation in Section 106, NEPA, NCPC, and CFA review, will be permanently lost if the alterations proceed before legally required reviews are completed. Monetary damages cannot compensate for the loss of DCPL's ability to fulfill its institutional mission and implement its core programmatic activities with respect to this site.

22. The harm is imminent. Defendants have publicly announced the Project, stated that "preliminary work has been started," and indicated that the Kennedy Center will close after July 7, 2026, for multi-year construction. DCPL is aware that new signage has been installed on the façade, exterior columns painted, and willow trees on the terrace cut down, without proper review. Absent judicial intervention, the Project will proceed without the legally required reviews.

23. In addition to DCPL's standing in its own right, DCPL also brings this action on behalf of its members. DCPL has 1,000 individual and business members, predominantly in Washington, D.C., but also across the country. Individuals become members by donating a minimum of $65 annually. Members receive access to member-only programming, educational activities, and advocacy updates.

24. At least one member of DCPL has standing to sue in their own right. Members of DCPL use and enjoy the Kennedy Center and the adjacent public grounds and derive aesthetic, cultural, professional, and educational benefits from the preservation of the Center's historic and architectural values and the public's continued access to its building and grounds. DCPL submits, contemporaneously with this declaration, the individual declaration(s) of Zachary Burt, Carl Landwehr, Frank Leone, and Amy Ballard, who are member[s] of DCPL and who have standing to sue in their own right.

25. The interests DCPL seeks to protect in this litigation are germane to DCPL's stated purpose, as described above. This lawsuit seeks to protect a nationally significant historic property from unlawful alteration and to ensure compliance with the federal historic preservation, environmental, and planning laws that DCPL exists to participate in and enforce.

26. Neither the claims asserted nor the declaratory and injunctive relief requested requires the participation of individual members. The claims present questions of law regarding Defendants' compliance with the NHPA, NEPA, the Administrative Procedure Act, and the applicable provisions of Title 20 and Title 40 of the United States Code. The relief sought will inure to the benefit of all effected members without individualized proof.

I declare under penalty of perjury that the foregoing is true and correct.

Rebecca Miller

Rebecca Miller, Executive Director
DC Preservation League

Executed on: 3/27/2026