**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DC PRESERVATION LEAGUE**, et al.,

*Plaintiffs*,

v.

**BOARD OF TRUSTEES OF THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS**, et al.,

*Defendants*.

Civil Action No.1:26-cv-00981

# DECLARATION OF DE TEEL PATTERSON TILLER IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

I, de Teel Patterson Tiller, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct and based on my personal knowledge:

1. My name is de Teel Patterson ("Pat") Tiller. I am over the age of eighteen and competent to make this declaration. I reside in Fairfax County, Virginia.

2. I am a current member of the Committee of 100 on the Federal City (the "Committee of 100"), one of our Nation's oldest, citizen-based, professional urban planning institutions. I have been a member since 2015. In addition, I currently serve as a Trustee for the organization and have previously served as an Officer (as Secretary). In my current capacity as Trustee, I hold governance responsibilities with my colleagues on the Board for overseeing the operations, focus, and activities of the Committee of 100, to carry out its mission to use advocacy and public education to preserve and enhance the historic, aesthetic, and natural character of Washington, D.C. by promoting high-quality design, planning, sustainable development, and responsible land use. In addition, and as a member, I provide expert assistance to the Committee of 100 in fulfilling that mission based on my longstanding professional experience in planning, parks management, design, architectural history, and historic preservation, among other things.



Doc ID: 8cf856181bd45f210aa9f88dc677c387e45ec7b0

3. I have longstanding personal connections to the John F. Kennedy Center for the Performing Arts (the "Kennedy Center") in Washington, D.C.

4. I am a fourth generation Washingtonian and have attended the Kennedy Center frequently since its opening in 1971. I plan to continue to visit and attend events at the Kennedy Center. I have tickets to the April 10th performance of Bruckner's Seventh Symphony. My interests in and connections to the Kennedy Center, however, are derived not solely from being a lifelong resident of the Washington D.C. area and avid "fan" of live theater performance but are related to my educational and professional background in multiple interests.

5. My undergraduate background and early professional experiences give me a unique perspective on both the performances carried out at the Kennedy Center, but also how the building itself was designed and stands as a nationally significant, cultural facility for the nation. Specifically, I received an undergraduate degree in Theater Arts from the University of Virginia in 1970 and subsequently worked as a professional scenic designer in regional, off-Broadway, and academic theatre for a number of years. As such, I have a keen understanding of the practical, technical, and aesthetic challenges that were addressed in the Kennedy Center's design and continued operations, much more so than a typical member of the concert or theater-going public.

6. In addition, I returned to the University of Virginia to begin graduate studies in the School of Architecture, from which I received a master's degree in architectural history with an emphasis in historic preservation in 1978. Subsequently, I joined an architectural firm specializing in historic building preservation and rehabilitation, followed by a tenure in a regional land use planning office in West Texas. I subsequently joined the National Park Service ("NPS") serving a career spanning 30 years in the Denver, Colorado and Washington, D.C. offices of that agency.



Doc ID: 8cf856181bd45f210aa9f88dc677c387e45ec7b0

7. With NPS, I worked primarily as a heritage preservation specialist and manager, eventually becoming the agency's Deputy Associate Director for Cultural Resources. In that capacity, I oversaw a wide range of federal programs in both the units of the National Park System as well as many significant historic places and properties nationwide working in partnership with State, local government, tribal governments, and non-profit organizations relating to the designation, management, and conservation of this nation's significant historic and prehistoric properties. These programs include such well known institutions as the National Register of Historic Places, National Historic Landmarks, and numerous federal granting, documentation, and technical assistance programs. I was also involved in policy development of the nation's systems to review and assess the impacts of federal actions constituting "undertakings" on both historic and prehistoric properties under Section 106 of the National Historic Preservation Act of 1966, as amended (known widely as the "Section 106 Process"). I was similarly involved in project reviews and evaluations of Environmental Assessments and Environmental Impact Statements for projects affecting cultural resources significant to the human environment under the National Environmental Policy Act of 1970, as amended (the "NEPA Review Process").

8. In addition to my professional experience at the National Park Service, I taught architectural history and historic preservation public policy, planning, and practice in adjunct positions at George Washington University, Goucher College, the University of Wyoming, the University of Virginia, and Kansas State University. Since retiring from NPS in 2005, in addition to serving as a Trustee and Officer of the Committee of 100 on the Federal City, I have served with other nonprofit organizations devoted to advancing the preservation of America's historic and cultural resources, buildings, and landscapes, including as a member of the boards of the Manassas



Doc ID: 8cf856181bd45f210aa9f88dc677c387e45ec7b0

Battlefield Trust, the Coalition to Protect America's National Parks, and the Friends of the National Center for Preservation Technology and Training.

9. Consequently, because of my educational and professional background and as a senior leader in the field of historic preservation at NPS, I have a keen appreciation of the historically significant specific design and architectural features of the historic Edward Durrell Stone-designed Kennedy Center, as well as a unique understanding of why it is so historically important nationally and internationally—deserving the highest standards of preservation. My many past visits to the Kennedy Center have not simply been as another member of the audience but as someone who deeply appreciates how its unique design was made to fit its role as an American cultural icon and memorial to President Kennedy, its architectural history within the Modernist Movement in architecture, and its importance to the Nation.

10. Over the past decades, I have attended scores of performances at the Kennedy Center, averaging three or four a year. At each, I have strolled the outdoor terraces, walked the halls, dined in the rooftop restaurants, enjoyed performance lighting and scenery, acoustics, and other aspects of the performances, and, since I am usually with friends, family, as well as current and former students, I have been able to share with them my unique perspective in light of my personal, professional, and academic background and experience as described above.

11. It is my intention—if not impeded by the proposed action of the Defendants to close the Kennedy Center for two years for yet-unspecified and seemingly massive "renovations"—to continue doing so and to share my specialized knowledge and experience with this and future generations of Americans and international visitors.

12. As explained below, the Defendants proposed actions in undertaking major renovations to the Kennedy Center and closing the facility for a number of years will impair my (and others')



Doc ID: 8cf856181bd45f210aa9f88dc677c387e45ec7b0

future enjoyment of the Kennedy Center. However, I have *already* been personally and concretely harmed by recent alterations made by the Kennedy Center Defendants without following legally required consultation and review procedures. The Defendant's recent action to paint (or cause to be painted) the Kennedy Center's 200, historically significant, slender, exterior columns from their original, architect's intended gold color to white was clearly an adverse action, conducted in the absence of legally required public consultation.

13. Reflecting my professional and academic background as described above, I have extensive knowledge and experience relating to the principles of professional historic preservation practice that prioritizes the preservation of original character-defining features of a historic structure, and particularly a nationally significant structure such as the Kennedy Center that has been determined eligible for the National Register of Historic Places. Those principles are reflected in standards and guidelines developed by the National Park Service and promulgated as *The Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for Preserving, Rehabilitating, Restoring & Reconstructing Historic Buildings*, National Park Service, 2017 (Secretary's Standards and Guidelines). During my tenure as Deputy Associate Director for Cultural Resources at the National Park Service, I was responsible for overseeing the revision, interpretation, and policy use of the Secretary's Standards and Guidelines in numerous projects managed by NPS as well as public and private sector nationwide under Section 106 Process and evaluation for their impacts on the cultural environment through an Environmental Assessment or Environmental Impact Statement as required by the NEPA Review Process.

14. The Kennedy Center's exterior columns were originally designed by the architect as gold in color—thus a significant, original character-defining feature of the historic building. The Defendants' recent unilateral change in color to white presages similar inappropriate changes to



Doc ID: 8cf856181bd45f210aa9f88dc677c387e45ec7b0

this nationally significant building in the upcoming larger undertaking—affecting the entire structure. It is my professional opinion—based on my extensive experience as a manager within the National Park Service, the agency responsible for establishing the Secretary of the Interior's Standards and Guidelines—that the Kennedy Center Defendants' alteration of the columns violated Standard for Rehabilitation 2, which states that, "The removal of historic materials or alteration of features and spaces that characterize a property shall be avoided." 36 C.F.R. § 67.7(b)(2). It is also my professional opinion that their alteration also violated Standard for Rehabilitation 5, "Distinctive features, *finishes*, and construction techniques or examples of craftsmanship that characterize a property shall be preserved." 36 C.F.R. § 67.7(b)(5) (Emphasis added.)

15. Consequently, the exterior columns color should not have been inappropriately and unilaterally altered by the Kennedy Center Defendants without going through the required legal, professional review requirements established by Congress. That unlawful alteration harmed me in two ways. First, it adversely affected my aesthetic enjoyment of the Kennedy Center as an important historic building from the Modernist period by eliminating a character-defining feature of the building. Second, because that legal review would have required public consultation through the Section 106 process, I, as well as fellow citizens, have been deprived of my opportunity—either directly as a citizen or as represented by the Committee of 100—to participate in such a nationally-important process. Those unlawful actions by the Kennedy Center Defendants harmed me in my capacity as a member and Trustee of the Committee of 100, which frequently participates as a Consulting Party in such projects in the Nation's Capital that are subject to Section 106 review, and which, I believe, would seek to participate in a Section 106 consultation on this matter had it been appropriately and legally initiated by the Kennedy Center Defendants. Similarly, their actions



Doc ID: 8cf856181bd45f210aa9f88dc677c387e45ec7b0

in failing to evaluate those changes through the NEPA Review Process deprived me, individually and as a member of the Committee of 100, of the benefit of that evaluation process.

16. Similarly, the installation by the Kennedy Center Defendants of new, large bronze lettering adding the words “The Donald J. Trump and” on the east elevation likewise has adversely affected me and visitors alike both in terms of my aesthetic enjoyment of the Kennedy Center and in my capacity as a member and Trustee of the Committee of 100 on the Federal City.

17. As with the exterior gold columns, the original lettering—a public dedication in monumental bronze letters installed on the east elevation of the Kennedy Center building—was a deliberate and prominent element of the original design, reflecting the intention of Congress that the building be permanently dedicated as a memorial to the late president. As with the gold columns, the original public dedication in large bronze lettering is also a character-defining feature of the historic Kennedy Center. The inappropriate and unilateral alterations to the dedication, as conducted by the Kennedy Center Defendants, should have been undertaken only following public consultation through the Section 106 process, and should have been evaluated through the NEPA Review Process. And again, this action presages similar actions in the much-advertised renovation to come.

18. The unlawful actions of the Kennedy Center Defendants in altering the public dedication to President Kennedy has not only adversely affected my aesthetic enjoyment of the Kennedy Center, but has also harmed me by depriving me of the opportunity—either directly or as represented by the Committee of 100—to participate in the consultation process that characterizes the Section 106 process, both individually and in my capacity as a member and Trustee of the Committee of 100. And again, the Defendants’ actions in failing to evaluate those changes through



Doc ID: 8cf856181bd45f210aa9f88dc677c387e45ec7b0

the NEPA Review Process deprived me, individually and as a member and Trustee of the Committee of 100, of the benefit of that evaluation process.

19. On March 16, 2026, the Board of Trustees and its Chair, Donald J. Trump, announced that in less than four months from that date the Kennedy Center will close completely for several years. While closed, the Kennedy Center buildings and grounds will undergo major structural work, up to and including demolition and reconstruction (the "Project"). The Kennedy Center Defendants have stated that "preliminary work has been started" and that "significant construction work" is anticipated to begin after July 7, 2026.

20. These proposed alterations would personally and concretely harm me as well as the historically significant Kennedy Center because the proposed alterations (given the recent actions on the columns and original historic sign) would likely and fundamentally change the historic character of the Kennedy Center in ways that would diminish my (and the public's) aesthetic enjoyment of the historically significant site. Specifically, the proposed changes would alter the features that I have described above as central to my personal experience of the Kennedy Center. In addition, the changes would further harm me because of the Defendants' failure to follow legally required process before proceeding with the Project and the already-completed alterations. Had Section 106 review been initiated, I would have had the opportunity, either directly or through the Committee of 100, to present my concerns about the impact of the proposed alterations on my concrete interests in the Kennedy Center as described above. Similarly, failure by the Kennedy Center Defendants to prepare an environmental assessment or environmental impact statement under the National Environmental Policy Act means that the environmental consequences of these alterations, including impacts on the monumental core, the historic parkway, and the Potomac River waterfront, have not been adequately studied or disclosed. I would have reviewed and



Doc ID: 8cf856181bd45f210aa9f88dc677c387e45ec7b0

commented on any such analysis, either directly or through the representation offered by the Committee of 100.

21. The harm I have described is irreparable. Once the original and historic fabric of the Kennedy Center is altered or destroyed, it cannot be restored to its original condition. The Kennedy Center's architectural and historic character, which forms the basis of its eligibility for the National Register of Historic Places, would be permanently compromised. The opportunity for meaningful public consultation will be permanently lost if the alterations proceed before the legally required reviews are completed. Monetary damages cannot compensate for the loss of the aesthetic, cultural, and historic qualities I have described. These qualities, once destroyed, cannot be recreated.

I declare under penalty of perjury that the foregoing is true and correct.

de Teel Patterson Tiller

de Teel Patterson Tiller

Executed on 03 / 27 / 2026



Doc ID: 8cf856181bd45f210aa9f88dc677c387e45ec7b0