**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DC PRESERVATION LEAGUE, *et al.*,

      *Plaintiffs*,

    v.

BOARD OF TRUSTEES OF THE JOHN F.
KENNEDY CENTER FOR THE
PERFORMING ARTS, *et al.*,

      *Defendants*.

Civil Action No. 26-0981

**JOINT STATUS REPORT**

On May 29, 2026, the Court denied Plaintiffs' motion for a preliminary injunction and directed the parties to "meet and confer in good faith to discuss appropriate next steps in this proceeding," and thereafter "file a joint status report with their proposals, which should address the potential submission of status reports to elucidate the scope and timing of the Kennedy Center renovation project, as well as any efforts by the Center to engage in regulatory review and permitting, voluntary or otherwise." ECF 45 at 42.

Pursuant to the Court's order, counsel for the parties have conferred and submit this status report with their respective proposals as to next steps. *First*, Defendants are willing to submit status reports regarding the scope and progress of the project. The parties will submit a further joint status report on Friday, June 26, with regard to the frequency and timing of such status reports. *Second*, Defendants have agreed to explore voluntarily producing the "integrated master schedule" for the project to Plaintiffs. *Third*, Defendants have pledged to inform the Court and Plaintiffs if there is any change in the Kennedy Center's plans or intentions that would constitute a reversal of the Center's position that the building will not be demolished or its position that no new building or structure will be erected.

*Plaintiffs***:** It is Plaintiffs' position that the appropriate next step in these proceedings is for Defendants first to determine whether they will (or will not) close the Center in light of the Court's order in *Beatty*, and then, in this case, to commit to a definite, written and certain project plan.

As the Court observed in its preliminary-injunction ruling, the "precise nature" of the construction Defendants intend to carry out at the Kennedy Center "is shrouded with uncertainty." ECF 45 at 16. Since the Court's order, Defendants' plans, already "remarkably vague," *id.* at 19, have only become more uncertain. Mr. Floca testified that the Center's integrated master plan for the project was based around the "two-year period of time" that the Center was scheduled to be closed.  Apr. 29, 2026 Hr'g Tr. 34:13-18, 75:7-17. In the *Beatty* case, however, the Court enjoined the Center from carrying out its decision to close. *See* Mem. Op., *Beatty v. Trump*, No. 25-4480 (D.D.C. Apr. 29, 2026). Defendants confirm that the Board has made no decision on this issue— that is, whether to re-visit the closure issue and more rigorously consider the costs and benefits, whether to appeal the Court's order, or whether to make other attempts to close the Center. Yet Defendants' construction plans were developed around the unique "opportunity" that the Center's full closure presented. Will those plans be adapted to a delayed closure or no closure at all? Further, it remains unclear today whether the Chair intends to demolish the Center and "[c]omplete[ly] rebuild[]" it, ECF 45 at 7, or whether he intends to walk away from the project entirely, as he has recently suggested, or do something in between.

While Defendants' promise of voluntary status reports represents a first step in bringing a modicum of disclosure to a project which has sorely lacked it, Plaintiffs submit this step is not nearly enough. Indeed, Plaintiffs conferred at length with Defendants about the bare minimum initial disclosure warranted, including (1) informing Plaintiffs whenever, in Defendants' view, the project triggers a regulatory or permitting requirement; (2) actually voluntarily producing (rather

than merely "explore voluntarily producing") the "integrated master schedule" for the project referenced by Mr. Floca in his April testimony upon receiving sign-off to do so; and (3) informing the Court and Plaintiffs of any change in the Kennedy Center's plans or intentions that are not only "a reversal of" the Center's position (that the building will not be demolished or its position that no new building or structure will be erected), but which are *inconsistent* with the fundamental findings of fact that the Court relied upon to deny Plaintiffs' preliminary-injunction motion. While Defendants' stated willingness to "discuss with the Center as to what information they can voluntarily produce" is appreciated, Defendants were unable to commit to these steps as of the date of this report. In Plaintiffs' view the above materials and promises are essential and, given the urgency of this matter, must be confirmed expeditiously.

Attempting to short-circuit the process by moving to dismiss Plaintiffs' complaint simply continues the "keep-away" effort, ECF 45 at 42, that has characterized the project to date. Plaintiffs will review and evaluate the materials produced by Defendants, as well as any other information Defendants provide regarding the closure of the Center and the status of the project, and reserve the right to seek any appropriate discovery, request more frequent or more detailed status reports than those presently contemplated, or seek any other relief.

*Defendants*: Regarding whether the Center's Board will contemplate a vote to close the Center for the proposed renovations, the Center's management is currently compiling a comprehensive briefing for the Center's Board of Trustees related to the financial, programmatic, and capital metrics associated with the Center's construction activities. As the project moves forward, the Board will review these metrics to make informed, independent determinations about the sequencing of construction activities, public safety, and the Board's fiduciary responsibilities, including whether any temporary facility closures might be necessary. The Board expects to

schedule one or more meetings in the coming weeks to coalesce around a plan for the Center's construction activities.  Defendants hope to be able to provide Plaintiffs further detail on the Center's construction and Board activities in the coming weeks.

As for next steps, at this time Defendants intend to move to dismiss the case.  Per the Court's May 28 minute order, Defendants' motion to dismiss is currently due on June 29. Defendants may move for a short extension of time in light of factual developments, as well as subsequent discussions with Plaintiffs as to how to proceed with this case now that the Court has denied Plaintiffs' preliminary injunction motion.  In the spirit of cooperation, Defendants intend to discuss with the Center as to what information they can voluntarily produce to Plaintiffs regarding the scope and schedule of the construction.

More problematically, however, Defendants strongly dispute Plaintiffs' characterization of the parties' conferral.  The matters Plaintiffs now describe as the "bare minimum" disclosures were, in fact, voluntary accommodations that Defendants offered in the spirit of cooperation and good faith, despite having no obligation to do so.

Regarding status reports: Defendants offered to provide regular updates, including whether the project might trigger regulatory or permitting requirements.  Plaintiffs' counsel indicated that further discussion regarding the timing and frequency would have to await document production, and as a result it was Defendants' understanding that the parties would address those issues in a Joint Status Report at a later date (now agreed to three weeks later).

Defendants also indicated a willingness to consider voluntarily producing materials such as the integrated master schedule following extensive internal review and other caveats ordinarily attendant to voluntary document production.  Likewise, Defendants unequivocally agreed to notify the Court if the Center determined that the existing building would be demolished or that a new

structure would be constructed.  Plaintiffs now attempt to recast these voluntary commitments as evidence of obstruction.    That effort relies on mischaracterizations of the conferral and unwarranted negative inference—not the substance of the parties' discussion.

Dated: June 5, 2026                                          Respectfully submitted,

*/s/ Thaddeus A. Heuer*                                      BRETT A. SHUMATE
Gregory B. Craig (164640)                                    Assistant Attorney General, Civil Division
FOLEY HOAG LLP
1717 K Street N.W.                                           YAAKOV M. ROTH
Washington, DC 20006                                         Principal Deputy Assistant Attorney
Tel: (202) 223-1200                                          General
gcraig@foleyhoag.com

                                                             ERIC J. HAMILTON
Thaddeus A. Heuer (*pro hac vice*)                           Deputy Assistant Attorney General
Kevin Y. Chen (*pro hac vice*)
Matthew F. Casassa (*pro hac vice*)
Marilyn Icsman (*pro hac vice*)                              DIANE KELLEHER
FOLEY HOAG LLP                                               Branch Director
155 Seaport Boulevard, Suite 1600
Boston, MA 02210                                             STEPHEN M. ELLIOTT
Tel: (617) 832-1000                                          Assistant Branch Director
theuer@foleyhoag.com
kchen@foleyhoag.com                                          /s/ *Pierce J. Anon*
mcasassa@foleyhoag.com                                       PIERCE J. ANON
micsman@foleyhoag.com                                        N.Y. Bar No. 6184303
                                                             Trial Attorney
                                                             U.S. Department of Justice
*/s/ Gregory Alan Werkheiser*                                Civil Division, Federal Programs Branch
Gregory Alan Werkheiser (VA210)                              1100 L Street NW
Marion Forsyth Werkheiser (486465)                           Washington, DC 20530
Lydia Dexter (OR0032)                                        (202) 305-7573
Jessie Barrington (VA224)                                    Pierce.Anon@usdoj.gov
Caitlin McCurdy (NH0004)
Katherine Lee Sorrell (TX0109)
CULTURAL HERITAGE PARTNERS, PLLC                             Counsel for Defendants
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
Tel: (202) 567-7594
greg@culturalheritagepartners.com
marion@culturalheritagepartners.com
lydia@culturalheritagepartners.com
jessie@culturalheritagepartners.com
caitlin@culturalheritagepartners.com
katherine@culturalheritagepartners.com

*/s/ Abbe David Lowell*
Abbe David Lowell (358651)
Caleb Hayes-Deats (1643213)
Isabella M. Oishi (90018056)
Angela Reilly (*pro hac vice*)

6

LOWELL & ASSOCIATES, PLLC
1250 H Street N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
alowellpublicoutreach@lowellandassociates.com
chayes-deats@lowellandassociates.com
ioishi@lowellandassociates.com
areilly@lowellandassociates.com

Counsel for Plaintiffs

7