**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| D.C. PRESERVATION LEAGUE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BOARD OF TRUSTEES OF THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:26-cv-00981 (CRC) |

**JOINT STATUS REPORT**

Pursuant to the Court's June 16, 2026 Minute Order (and several extensions thereof), the

parties provide their respective positions about the status of this litigation.

**A. Joint Statement:**

Defendants agree to file an Answer on or before July 31, 2026. The Parties also respectfully

request that the Court require the Parties to file a joint status report after the next meeting of the

Center's Board.  As detailed below, the Parties differ as to the deadline by which they believe that

report should be filed, and request that such deadline be established by this Court.  That joint status

report will apprise the Court of any further proceedings that might be necessitated by the Board's

actions at that meeting.  Following such joint status report, the Parties respectfully request that the

Court set a case management hearing to discuss next steps in this case; including the scope and

timing of any discovery, and motions for summary judgement.

1

## B. Defendants' Statement

### i. *Plans for Construction*

As required by the Court's Order, Defendants here "apprise the Court of the scope and progress of the Kennedy Center renovation project; propose the frequency, timing, and content of future joint status reports in this case; and include any other information relevant to the issues identified in the [ECF No.] [46] report." Min. Order (June 16, 2026).

As of filing, the Center's management intends to compile materials for a Board vote on multiple options for completing necessary capital repair and construction and fulfilling the Board's statutory and fiduciary duties under the law. *See* Decl. of Charles Matthew Floca, ¶ 3. Although recommendations have not yet been finalized, Center management intends to present to the Board with an array of options. *See id* ¶ 3(a)–(c). One option will likely contemplate a complete closure of the Center to conduct construction activities with no ongoing programming. *See id.* ¶ 3(a). Another option will likely contemplate a partial closure of various spaces within the Center and its building, enabling some continued public access and limited programming in spaces unaffected by the need for capital repair, if any. *See id.* ¶ 3(b). A third option will likely contemplate a series of phased closures to address only the Center's most serious infrastructure needs while scheduling and maintaining more onsite programming. *See id.* ¶ 3(c). Center management expects to present these options to the Board for a vote in the first week of August. *See id.* ¶ 3(a)–(c).

Regarding the scope of construction, the scope as represented to the Court has not changed. *See id.* ¶ 6. As stated in Mr. Floca's live testimony before the Court on April 29, 2026, there are no plans under the proposals being prepared by management for presentation to the Board where the Center will be demolished, a new building will be erected on the campus, or where the exterior architecture of the Center will be materially altered. *Id.* Any future changes would follow the ordinary approval process, including Board approval.

As for work that is currently being done at the Center—the Center is engaging in routine and preventative maintenance across the campus. *See id.* ¶ 5. This includes localized painting, planned electrical shutdowns to facilitate critical equipment preventative maintenance, and comprehensive asset logging. *Id.* And with regard to the capital improvement efforts—the Center is actively performing an analysis of the exterior soffits to evaluate the structural issues identified and discussed at length in the April 29, 2026 hearing. *Id.* But because the Board has not yet voted on whether the Center will fully, partially, or phase its closure in anticipation of the planned renovations, the Center's baseline operations remain dynamic, and certain aspects of the forward-looking renovation plans remain subject to some modification as a result. *Id.*

The Center continues to prepare for additional capital repair and construction activities. *See id.* ¶ 4. The Center expects those activities to take place between roughly July and December 2026, although the exact timeline of these repairs is subject to change following the Board's continued consideration of the most responsible path forward for the Center to conduct capital repair and construction. *Id.*

### ii. Regular Status Reports

As Defendants had presented to Plaintiffs in their meet and conferral, and as previewed in the June 5, 2026 Joint Status Report, ECF No. 46, Defendants are willing to apprise the Court in status reports produced every 90 days of any material change to the scope of the proposed renovations, the progress of the renovations, and any efforts by the Center to engage in federal regulatory review and permitting, starting with a report two weeks after the next meeting of the Center's Board. That schedule is more than reasonable.

Plaintiffs' proposal of a report just five days after the meeting and reports every 60 days thereafter is excessively burdensome and would constitute micromanagement of the Center's repairs, not "meaningful oversight." And their proposed event-based reporting is vague and

impracticable, as it is unclear what changes would trigger the obligation to report that the project is "intended to affect the Center's massing or open space."

Likewise, it would also be unclear what would trigger a "change in the operation of the grounds"—indeed, the meaning of such language was a point of dispute in this litigation. Requiring a party to self-report whenever, under its own interpretation, it believes certain actions constitute a "change in the operation of the grounds"—where the opposing party does not share that understanding of the term—would create myriad practical problems.  And the Court recognized as much, not just that an alternative reading exists, but that Defendants' understanding of that term is the "more natural" reading.  *See* PI Op. at 26  ("Yet it is also possible—and, in the Court's view, more natural—to read "management and operation" in a different manner).

Last, Plaintiffs seek disclosure of the integrated master schedule.   The time for any such request is in discovery, should any occur.  Defendants have made clear, above, the current planned scope of the project, which will be further clarified at the next Board meeting, which is anticipated in just a few weeks. No more is necessary now.

### C.  Plaintiffs' Statement:

Plaintiffs disagree with Defendants as to the appropriate frequency for status reports regarding the progress of the project.  Months ago, the Court admonished Defendants not to "play keep-away in order to evade either judicial or regulatory review." ECF No. 45 at 42.  Yet since then, Defendants have provided no meaningful information about the project's scope or process. In light of the still-uncertain state of the project, Plaintiffs propose that Defendants submit a status report within *five days* following the August 2026 meeting of the Board of Trustees, detailing at minimum (1) the scope and progress of construction, renovation, rehabilitation, demolition, or any other related work and (2) the work planned for the next 60-day period, and that Defendants submit subsequent status reports covering these same topics *every 60 days* thereafter.  Further, Plaintiffs

4

propose that in addition to such 60-day status reports, Defendants submit a special status report at least 15 days before Defendants apply for any permits, or take any actions that would alter the fundamental assumptions of the Court's preliminary-injunction order. Such actions include whether the project will or is intended to affect the Center's massing or open space or make any change in the operation of the grounds (including but not limited to partial physical closure to the public, for which "the Court observes that . . . rulemaking would seem to be in order," PI Mem. 27 n.9). This advance notice is necessary so that Plaintiffs may in an orderly and timely manner file any emergency motions, including but not limited to motions for temporary restraining orders.

Plaintiffs disagree with the government's characterization of the status reports. It is not burdensome to file a status report every two months, nor is it vague to determine when one will apply for a permit or change the massing of a building. It is no more or less than that to which the government has agreed, and the Court has ordered, in other, similar cases. *See* Consent Order, *Lemmon v. Trump*, No. 26-cv-544 (D.D.C. Apr. 8, 2026), ECF 26 ("Defendant NPS shall provide at least 14 days notice prior to commencement of construction, or demolition in preparation for construction, of an arch on Memorial Circle by filing notice on the public docket in this case[.]"); Joint Status Report, *Lemmon v. Trump*, No. 26-cv-544, at 2 (D.D.C. Apr. 6, 2026), ECF 24 (government agreeing to same).

The government's proposed interval of every three months is insufficient to ensure meaningful oversight, particularly in light of the dearth of information provided to date and the speed with which the government has undertaken other D.C.-area projects. *See* Joint Status Report and Proposed Briefing Schedule, *Cultural Landscape Found. v. U.S. Dep't of the Interior*, No. 26-1593, ECF No. 20 (D.D.C. June 10, 2026) (government's position asserting that "Plaintiffs lacked standing when they filed this suit. … This is all the more so now given that the [Reflecting Pool]

project is complete."); *Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*, No. 25-4316, 2026 U.S. Dist. LEXIS 69920, at *5 (D.D.C. Mar. 31, 2026) (detailing how "the East Wing had been demolished in its entirety").

Plaintiffs further request that the Court direct the government to immediately produce the integrated master schedule for the project. Based on Mr. Floca's testimony at the preliminary-injunction hearing, the integrated master schedule has been complete since the end of May. *See* Apr. 29, 2026 Hr'g Tr. 67:23-68:15. Neither the parties nor this Court can meaningfully move forward in the case while Defendants refuse to disclose what their plans for the project are, and there is no reason for further delay.

Dated: July 14, 2026

Respectfully Submitted,


/s/ *Gregory B. Craig*

Gregory B. Craig (164640)
Rawda Fawaz (90015786)
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006
Tel: (202) 223-1200
gcraig@foleyhoag.com

Thaddeus A. Heuer (*pro hac vice*)
Kevin Y. Chen (*pro hac vice*)
Matthew F. Casassa (*pro hac vice*)
Marilyn Icsman (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Tel: (617) 832-1000
theuer@foleyhoag.com
kchen@foleyhoag.com
mcasassa@foleyhoag.com
micsman@foleyhoag.com

/s/ *Gregory Alan Werkheiser*

Gregory Alan Werkheiser (VA210)
Marion Forsyth Werkheiser (486465)
Lydia Dexter (OR0032)
Jessie Barrington (VA224)
Caitlin McCurdy (NH0004)
Katherine Lee Sorrell (TX0109)
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
Tel: (202) 567-7594
greg@culturalheritagepartners.com
marion@culturalheritagepartners.com
lydia@culturalheritagepartners.com
jessie@culturalheritagepartners.com
caitlin@culturalheritagepartners.com
katherine@culturalheritagepartners.com


/s/ *Abbe David Lowell*

Abbe David Lowell (358651)
Caleb Hayes-Deats (1643213)

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER M. LYNCH
Chief Litigation Counsel

/s/ *Pierce Anon*

PIERCE J. ANON
N.Y. Bar No. 6184303
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
(202) 305-7573
Pierce.Anon@usdoj.gov

Counsel for Defendants

7

Isabella M. Oishi (90018056)
Angela Reilly (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
alowellpublicoutreach@lowellandassociates.com
chayes-deats@lowellandassociates.com
ioishi@lowellandassociates.com
areilly@lowellandassociates.com

Dated: July 14, 2026