**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

D.C. PRESERVATION LEAGUE, *et al.*,

*Plaintiffs*,

v.

BOARD OF TRUSTEES OF THE JOHN F. KENNEDY CENTER FOR THE PERFORMING ARTS, *et al.*,

*Defendants*.

Civil Action No. 1:26-cv-00981 (CRC)

**JOINT STATUS REPORT**

Pursuant to the Court's July 17 Minute Order, the parties provide their respective positions about the status of this litigation. As required by the Court's order, Defendants here "appris[e] the Court of relevant developments and proposing next steps in light of the actions taken at that meeting." Min. Order (June 17, 2026).

**A. Defendants' Statement:**

***i. Plans for construction and operations***

The Center's Board of Trustees met on August 13, 2026, to vote on course of action for the Center's forthcoming programming schedule, level of operations, and construction activities. *See* Decl. of Charles Matthew Floca ¶ 3. Prior to the vote, an independent analyst from the Delta Consulting Group presented an overview of the Center's structural needs. *Id.* The Delta consultant developed two different proposals for the Center's forthcoming operational model and discussed the Center's programming outlook, operational needs, and construction prospects. *Id.* ¶¶ 3–4. During the presentation, the analyst provided his expert opinion that a partial closure model—which would contemplate four years of revolving partial closures of the main building of the

Center—would increase the length and cost of construction and lead to substantial safety concerns. *Id.* ¶ 4. He also noted his opinion that the Center would suffer a reduction in both revenue and fundraising ability over the entire four years of a partial closure, leading also to reputational damage that would result from the proximity of construction activities to performance venues. *Id.* He recommended that the Board proceed with a full closure for two years, which would minimize total cost, minimize the amount of time that programming would be subject to disruptions from construction, and best preserve the Center's reputation as world-class performing-arts venue. *Id.* After receiving this information and engaging in discussion about the proper course, the Board voted to adopt a closure proposal that contemplates a full closure of the main building of the Center; the maintenance of fine- and performing-arts programming activities at the REACH building on the Center's campus; support for offsite performances by the National Symphony Orchestra; the continuation of educational programming; the continuation of signature productions put on by the Center, like the Kennedy Center Honors and the Mark Twain Prize for American Humor, at offsite locations; and the relocation of the memorial experience for President Kennedy to the REACH building. *See id.* ¶ 5.

***ii. Scope of construction***

Prior to the meeting, the Board was also provided with a comprehensive project development plan detailing the scope of construction. *See id.* ¶ 6. Also appended to this development plan was an integrated schedule laying out project timelines for renovation related actions items, as well as a budgetary document describing each discrete renovation subproject and its associated budget allocation. *Id.* These documents confirm that the scope of construction, as represented to the Court during Mr. Floca's April 29, 2026, live testimony, has not changed. *See id.* ¶ 7. Individually and collectively, the documents demonstrate that the Center "will not be demolished," that "no new building will be erected on the campus," and that "the exterior

architecture of the Center will not be materially altered." *Id*. Naturally, any future changes to such plans would need to follow the ordinary approval process, including Board approval. *Id*.

Defendants delivered a copy of these materials to Plaintiffs' counsel on August 16, 2026, in the spirit of cooperation, and to demonstrate that Plaintiffs' most serious concerns will not come to pass. If the Court believes these materials would be helpful to its administration of this case as it confirms the veracity of Mr. Floca's live testimony, Defendants would be happy to furnish these materials under seal with the Court. Filing under seal would be necessary as the construction plans contain sensitive information regarding the Center's physical security that may not otherwise be easily segregated through redactions. Defendants stand ready to answer any further questions the Court may have regarding the scope of the proposed renovations.

As for next steps in this case, the Parties' Meet and Confer report is due on August 28, *see* ECF No. 59; *see also* Min. Ord. (August 14, 2026).

Last, Plaintiffs raised their request for an additional joint status report for the first time at 5:27pm the night of this filing. Defendants do not understand what an additional report would accomplish considering the Parties have a Rule 26 report due August 28. Defendants oppose such a request.

**B. Plaintiffs' Statement:**

As Defendants note, they provided Plaintiffs with a copy of their comprehensive project development plan ("CPDP") on August 16, 2026, under a confidentiality agreement. Defendants did not provide Plaintiffs with an advance copy of the new Floca Declaration on which they rely.

Plaintiffs' counsel is currently reviewing the CPDP. However, on preliminary review, counsel has identified several areas of concern relating to issues raised in the Court's prior opinion. In denying Plaintiffs' preliminary injunction motion, the Court expressly noted that its analysis "might look substantially different" if the construction work were to "require[] permits that the

Center has yet to acknowledge or secure." ECF 45 at 2. The Court further emphasized that, "[i]f the construction work does implicate the jurisdiction of one or more of the Agency Defendants, the APA claims against them may have force." *Id.* at 41.

On preliminary review, the CPDP contains elements that raise the possibility that the scenario the Court contemplated—in which relief could become appropriate based on the project's scope—may in fact be materializing. Separately, the Board recently voted to inscribe President Trump's name into the building's exterior marble.[1] Whether such alteration to the historic façade triggers regulatory notification obligations is a question Plaintiffs need the opportunity to assess. Although Defendants contend the CPDP "demonstrate[s] that Plaintiffs' most serious concerns will not come to pass," *supra* A.ii, it is for Plaintiffs—not Defendants—to determine the seriousness of their concerns and whether they have been addressed.

Plaintiffs endorse Defendants' suggestion that the Court receive a copy of the CPDP, and they do not oppose Defendants' request to file the document under seal. Plaintiffs respectfully request that the Court order the parties to submit another joint status report within 14 days of Defendants' filing of the CPDP, so that Plaintiffs may specifically evaluate the plan's implications for this litigation and address regulatory questions raised by the Board's recent actions. Plaintiffs recognize the parties' Meet and Confer Report is due August 28; this request is for a separate submission specifically addressing the issues described above.

[1] *See* Julia Jacobs, *Kennedy Center Board Decides to Inscribe Trump's Name on Building*, N.Y. Times (Aug. 13, 2026), https://www.nytimes.com/2026/08/13/arts/design/kennedy-center-closure-board-vote-trump.html.

Dated: August 18, 2026

Respectfully Submitted,

*/s/ Gregory B. Craig*
Gregory B. Craig (164640)
Rawda Fawaz (90015786)
FOLEY HOAG LLP
1717 K Street N.W.
Washington, DC 20006
Tel: (202) 223-1200
gcraig@foleyhoag.com
rfawaz@foleyhoag.com

Thaddeus A. Heuer (*pro hac vice*)
Kevin Y. Chen (*pro hac vice*)
Matthew F. Casassa (*pro hac vice*)
Marilyn Icsman (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Boulevard, Suite 1600
Boston, MA 02210
Tel: (617) 832-1000
theuer@foleyhoag.com
kchen@foleyhoag.com
mcasassa@foleyhoag.com
micsman@foleyhoag.com

*/s/ Gregory Alan Werkheiser*
Gregory Alan Werkheiser (VA210)
Marion Forsyth Werkheiser (486465)
Lydia Dexter (OR0032)
Jessie Barrington (VA224)
Caitlin McCurdy (NH0004)
Katherine Lee Sorrell (TX0109)
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
Tel: (202) 567-7594
greg@culturalheritagepartners.com
marion@culturalheritagepartners.com
lydia@culturalheritagepartners.com
jessie@culturalheritagepartners.com
caitlin@culturalheritagepartners.com
katherine@culturalheritagepartners.com

*/s/ Abbe David Lowell*
Abbe David Lowell (358651)

BRETT A. SHUMATE
Assistant Attorney General, Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER M. LYNCH
Chief Litigation Counsel

/s/ *Pierce J. Anon*
PIERCE J. ANON
N.Y. Bar No. 6184303
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
(202) 305-7573
Pierce.Anon@usdoj.gov

Counsel for Defendants

Caleb Hayes-Deats (1643213)
Isabella M. Oishi (90018056)
Angela Reilly (*pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street N.W., Suite 250
Washington, DC 20005
T: (202) 964-6110
F: (202) 964-6116
alowellpublicoutreach@lowellandassociates.com
chayes-deats@lowellandassociates.com
ioishi@lowellandassociates.com
areilly@lowellandassociates.com

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Pierce J. Anon, hereby certify that on August 18, 2026, I electronically filed the foregoing, and all its attachments, using the Court's CM/ECF system, which automatically serves this document upon all counsel of record, in keeping with LCvR 5.4(d).

*/s/ Pierce J. Anon*
Pierce J. Anon

*Counsel for Defendants*